[Nos. 45296, 44890, 44597. En Banc. April 24, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. JAMES H. SMITH, *Appellant.*

THE STATE OF WASHINGTON, *Respondent,* v. DAVID L. ANDERSON, *Petitioner.*

THE STATE OF WASHINGTON, *Respondent,* v. DAVID J. REDWINE, ET AL, *Appellants.*

*Clifford R. Kuhn, Don L. McCulloch,* and *Roethler & McCulloch,* for petitioner Anderson.

*Ries & Kenison,* by *Jerry J. Moberg,* for appellants Redwine.

*Smith, Kaplan, Withey, Theiler & Sowa* and *Daniel Hoyt Smith (Timothy K. Ford* of American Civil Liberties Union of Washington and the National Organization for the Reform of Marijuana Laws), for appellant Smith.

*Robert E. Schillberg, Prosecuting Attorney for Snohomish County, David G. Metcalf* and *Carl K. Chen, Deputies, Paul Klasen, Prosecuting Attorney for Grant*

*County,* and *James A. Whitaker, Deputy, Henry R. Dunn, Prosecuting Attorney for Cowlitz County,* and *James E. Warme, Deputy,* for respondent.

*Robert H. Aronson* on behalf of University of Washington Appellate Advocacy Program, amicus curiae.

ROSELLINI, J.—This is a consolidated appeal of four individual criminal convictions. Each of the defendants was convicted of a violation of the Uniform Controlled Substances Act, RCW 69.50. We consolidated the appeals to facilitate the resolution of issues which raise constitutional challenges to the statutory prohibitions. We affirm the convictions.

Petitioner Anderson was convicted in Cowlitz County Superior Court of violation of RCW 69.50.401(a), the proof showing that he gave a small amount of marijuana to a police agent. In addition, he was convicted of a misdemeanor, possession of marijuana in a quantity less than 40 grams. Division Two of the Court of Appeals affirmed the convictions in a published opinion. *State v. Anderson,* 16 Wn. App. 553, 558 P.2d 307 (1976). This court granted a petition for review.

The appellants Redwine and Smith were respectively convicted in Grant and Snohomish County Superior Courts for violations of RCW 69.50.401(c), punishing the felonious possession of over 40 grams of marijuana. The activity upon which their convictions are factually based was confined to areas in and around their private residences. None of these parties disputes the sufficiency of the evidence to establish possession or delivery of marijuana. Rather, they argue that in light of the locus of the crimes and current information regarding marijuana, their convictions are constitutionally infirm.

These parties, referred to herein as the defendants, join in two constitutional challenges. They argue that the statutory scheme prohibiting marijuana delivery or possession

bears no fair and substantial relation to legitimate governmental objectives and thus violates equal protection guaranties; and that their constitutional right to privacy protects marijuana possession and use within the home, because the State has shown no substantial reason for the regulation. The defendant Smith adds a contention that the punishment prescribed for possession is cruel and unusual. These constitutional challenges are framed against the trial record of defendant Smith. We will precede our discussion of the constitutional issues by reviewing this record which defendants assert establishes the unconstitutionality of the challenged statutory scheme.

The record upon which defendants rely contains the testimony of several expert witnesses. In addition, it contains the testimony of a former drug addict, as well as the testimony of a police officer. The record establishes that marijuana, like alcohol, when ingested into the human body, produces physiological and psychological effects. The chief active ingredient in marijuana, and the one largely responsible for its effects, is called tetrahydrocannabiniol (THC). The level of THC in samples of marijuana varies, and this variation accounts in part for the differences in human reactions to the drug. There is no way of predicting how much THC will be found in a given quantity of marijuana, since it is a plant—a collection of substances easily subject to change.

There is little question, under the evidence, that once a threshold dose of THC, as in marijuana, is ingested by a person, it will produce a euphoric state of intoxication. In addition to this state, there is accompanying distortion of the person's sensory perceptions. The record reflects that use of marijuana impairs an individual's motor coordination, learning ability, and motivation.

Expert witnesses also informed the trial judge that there are other frequently recognized and often debated effects of marijuana. These include effects on: (1) chromosomes, (2) the endocrine system, (3) testosterone (a hormone), and

(4) the formation of deoxyribonucleic acid (DNA) (the substance of which genes are composed).

There is evidence that marijuana may cause deleterious effects not caused by alcohol. Thymidine is a chemical which is the building block of DNA. The testimony indicates that marijuana may affect the incorporation of thymidine into DNA, whereas alcohol does not. Further, THC is not degraded in the body in the same way that alcohol is. A dose of THC may remain in the body up to 8 days.

Scientific findings respecting marijuana effects are not settled. One expert said that chromosome studies are "at variance with each other". Another expert, remarking on the difficulty of experimentation and documentation in the area of marijuana effects stated candidly: "It is not something you get a quick answer to."

This is amply demonstrated by the divergent results of studies. For example, in one experimental study commented upon by an expert witness, evidence of brain atrophy was found in marijuana users. Yet, in another study which utilized a different measurement technique, no evidence of atrophy was found. This divergence led an expert to state that with regard to marijuana's effects: "There is generally legitimate debate amongst people I have a great deal of respect for."

The defendant's record does not seem to resolve this debate. Rather, from it, we, like the trial judge, learn that the long term effects of marijuana are not fully known. This is partially because studies have been limited. For example, the Food and Drug Administration prohibits the use of women subjects. Thus, it will be at least a generation before fetal effects may be fully explored. There has been little study of the effects on children.

The trial judge ruled that in light of present uncertainty with respect to the effects of marijuana, the legislature could classify marijuana as a drug with potential for abuse. He concluded that the defendant had not sustained his

burden of proving the act unconstitutional. We are convinced the trial judge carefully, correctly held that the burden of proof was not met.

While defendants do not contend that they have a constitutional right to possess marijuana, they urge that we independently review the record and their arguments. *See State v. Sweet*, 90 Wn.2d 282, 581 P.2d 579 (1978); and *State v. Byers*, 85 Wn.2d 783, 539 P.2d 833 (1975). We have reviewed that record, but we are not permitted to ignore or question the credibility of the testimony of the State's witnesses or disregard the unresolved debate regarding marijuana's effects, as the defendants would have us do. With this in mind, we now turn to the constitutional challenges.

I

Defendants challenge the constitutionality of RCW 69.50.401(a) and (c) on equal protection grounds.[1] They assert that prohibition of marijuana bears no fair and substantial relation to a legitimate state interest.

At the outset of any equal protection analysis it is necessary to define the standard of review against which to test the challenged legislation. In this case, the designation of the appropriate test is important since defendants' argument is that marijuana prohibition must bear a fair and substantial relation to a legitimate state objective.

■ Two tests are used to judicially measure classifications alleged to violate equal protection: the strict scrutiny test and the rational relation test. *Nielsen v. Washington*

---

[1] "(a) Except as authorized by this chapter, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance." RCW 69.50.401(a).

"(c) It is unlawful for any person to possess a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his professional practice, or except as otherwise authorized by this chapter. Any person who violates this subsection is guilty of a crime, and upon conviction may be imprisoned for not more than five years, fined not more than ten thousand dollars, or both, except as provided for in subsection (d) of this section." RCW 69.50.401(c) (now RCW 69.50.401(d)).

*State Bar Ass'n,* 90 Wn.2d 818, 585 P.2d 1191 (1978). The former is applied whenever a legislative classification involves a fundamental right or creates a suspect classification. *Nielsen v. Washington State Bar Ass'n, supra; Graham v. Richardson,* 403 U.S. 365, 371–72, 29 L. Ed. 2d 534, 91 S. Ct. 1848 (1971).

The latter, the rational relation test, despite contrary dicta appearing from time to time in our cases, is used whenever legislation does not infringe upon fundamental rights or create a suspect classification.[2] *Brewer v. Copeland,* 86 Wn.2d 58, 69 n.8, 542 P.2d 445 (1975); *see State v. Laitinen,* 77 Wn.2d 130, 459 P.2d 789 (1969); and *State v. Ruzicka,* 89 Wn.2d 217, 570 P.2d 1208 (1977).

The statutory prohibition in this case neither creates a suspect classification nor, as defendants readily admit, does it involve a fundamental right. Thus, in considering this equal protection challenge, we will sustain the challenged classification if it is rationally related to a legitimate governmental objective. And, in looking for a rational relation, we may assume the existence of any necessary state of facts which we can reasonably conceive. *State v. Ruzicka, supra; Brewer v. Copeland, supra; Aetna Life Ins. Co. v. Washington Life & Disability Ins. Guar. Ass'n,* 83 Wn.2d 523,

---

[2]Much if not all of defendants' equal protection argument is premised on the faulty assumption that the relationship shown must be more than a mere rational relationship. They consistently argue the statute bears no fair and substantial relation to governmental objectives. These arguments have no merit since, as we have noted, the relationship need only be rational. We have never adopted and used a higher standard in the absence of a suspect class or fundamental right.

In *State v. Martinez,* 85 Wn.2d 671, 680, 538 P.2d 521 (1975), the court invalidated a criminal prohibition on due process vagueness grounds. Thereafter, in dicta, the court suggested that in cases where a penal statute involving possible incarceration was challenged as violative of equal protection, invigorated scrutiny should be applied. *See State v. Martinez, supra* at 682. The essence of "invigorated" scrutiny is that a classification must rest upon some difference that has a *fair and substantial* relation to the legislation. We have not, contrary to defendants' suggestion, adopted this standard. To the extent, however, that *Martinez, Houser v. State,* 85 Wn.2d 803, 540 P.2d 412 (1975), and *Standow v. Spokane,* 88 Wn.2d 624, 564 P.2d 1145 (1977) contain dicta to the contrary, they are expressly overruled.

520 P.2d 162 (1974). In order to defeat the legislation, the defendant must show, beyond a reasonable doubt, that no state of facts exists or can be conceived sufficient to justify the challenged classification, or that the facts have so far changed as to render the classification arbitrary and obsolete. *Brewer v. Copeland, supra; State v. Ruzicka, supra.*

In an effort to meet this burden, the defendant Smith compiled a substantial record. If the defendants' view of the facts is correct, marijuana is not as harmful as the legislature believes, and therefore the legislation was perhaps ill advised. But a challenge, however meritorious, which is directed to the wisdom of the statute will not justify a court in finding it unconstitutional. *Washington State School Directors Ass'n v. Department of Labor & Indus.,* 82 Wn.2d 367, 378, 510 P.2d 818 (1973). The legislature represents the people when it determines that a law is necessary, wise, or desirable, and the court is not empowered to substitute its judgment for that of the legislature.

The record also tends to show that public opinion regarding use of marijuana has vacillated and shifted over the years. But a shift in public opinion is not a basis for invalidations of law. *State v. Grabinski,* 33 Wn.2d 603, 206 P.2d 1022 (1949).

There can be no question of the authority of the State, in the exercise of its police power, to regulate the administration, sale, prescription and use of dangerous or habit–forming drugs. The right to exercise this power is so manifest in the interest of the public health and welfare, that it is too firmly established to be called in question. *Robinson v. California,* 370 U.S. 660, 8 L. Ed. 2d 758, 82 S. Ct. 1417 (1962).

The Supreme Court said there that the legislature may impose criminal sanctions upon the possession of narcotics within its borders, and the wisdom of such legislation would not be open to judicial review. While marijuana may not be a narcotic (*see State v. Zornes,* 78 Wn.2d 9, 475 P.2d 109 (1970)) or habit forming, if the legislature reasonably has

concluded that it is dangerous, it has a broad discretion in prescribing penalties for its possession.

■ Our review of the record reveals certain critical facts which show that marijuana presents certain dangers, and that its prohibition is reasonably related to the public health and safety. Marijuana creates a euphoric state of intoxication which impedes learning, incentive, efficiency, and, importantly, motor coordination. There remains a conflict of expert opinions regarding the seriousness of marijuana's effects, and much has yet to be learned. From reading this record, we cannot say that all doubts about the safety of marijuana have been resolved in its favor.

Assuming that the legislature had before it the evidence in this case concerning the known effects of marijuana and the as yet unknown properties of the drug, it could reasonably find that marijuana creates a danger to users and others.

Furthermore, the legislature may well have considered more evidence than was brought before the trial court in this case. We cannot say, therefore, that the adoption of laws imposing criminal penalties was not reasonably indicated to protect the public welfare.

We note that the apparent dangers of marijuana use have been recognized by other courts. Recent judicial opinions, including *Ravin v. State,* 537 P.2d 494 (Alaska 1975), find that in spite of advanced knowledge the suggested dangers are, as yet, rationally based. *See also Marcoux v. Attorney General,* 375 Mass. 63, 375 N.E.2d 688 (1978), *and see Blincoe v. State,* 231 Ga. 886, 204 S.E.2d 597 (1974); *State v. Kells,* 199 Neb. 374, 259 N.W.2d 19 (1977); *and see People v. Summit,* 183 Colo. 421, 517 P.2d 850 (1974).[3]

In legislating for health, safety and welfare, certain constraints upon individual freedom have traditionally been

---

[3]The United States Supreme Court recently declined to review a conviction under Virginia law for the possession of marijuana with intent to distribute it. *Moon v. Virginia,* 439 U.S. 953, 58 L. Ed. 2d 344, 99 S. Ct. 350 (1978). The petitioner in that case urged that the classification of marijuana with hard drugs for punishment purposes is without rational basis and therefore violates due process.

imposed by the State. Often, such constraints protect both society generally and the individual personally from the perceived harm. *See, e.g., State v. Laitinen, supra* (motorcycle helmet law sustained). It is not our proper function to substitute our judgment for that of the legislature with respect to the necessity of these constraints.[4]

██ We hold the statutory prohibitions against marijuana use are rationally related to the accomplishment of a legitimate governmental objective—public health and safety. As such, they are not violative of equal protection. We also note in ruling on this matter that, contrary to defendants' suggestion, there is no constitutional requirement which dictates that the legislature must be held rigidly to a rule of regulating all or none of the evils it perceives.

> It is enough that the present statute strikes at the evil where it is felt and reaches the class of cases where it most frequently occurs.

*Silver v. Silver,* 280 U.S. 117, 124, 74 L. Ed. 221, 50 S. Ct. 57, 65 A.L.R. 939 (1929); *see Aetna Life Ins. Co. v. Washington Life & Disability Ins. Guar. Ass'n, supra. Ravin v. State, supra,* and *State v. Kells, supra.*

## II

Next, the defendant Smith raises a contention that his conviction is barred under the eighth amendment to the United States Constitution and Const. art. 1, § 14, both of which forbid the imposition of cruel punishment, the federal constitution also forbidding "unusual" punishment.[5]

---

[4]An annotation in 50 A.L.R.3d 1164, 1177 n.18 (1973) reveals that the majority of courts which have entertained equal protection challenges on grounds that marijuana is not a narcotic drug have sustained the challenged laws. After our decision in *State v. Laitinen,* 77 Wn.2d 130, 459 P.2d 789 (1969), the legislature in response to substantial public pressure amended the law, deleting the helmet requirement, thus illustrating the efficacy of this principle. Laws of 1977, 1st Ex. Sess., ch. 355, § 55, p. 1598.

[5]We have in the past accorded these two constitutional standards essentially identical treatment. *See, e.g., State v. Smith,* 74 Wn.2d 744, 446 P.2d 571 (1968);

While this provision is thought to have been designed primarily to prohibit torture and other forms of physical cruelty, as well as the imposition of sentences unauthorized by law, it was held in *Weems v. United States,* 217 U.S. 349, 54 L. Ed. 793, 30 S. Ct. 544 (1910), that it also prohibits legislation which mandates a punishment which is grossly excessive. In that case, the petitioner had been convicted under a statute of the Philippines which provided a minimum sentence of 12 years for the falsifying of a public record. Also attached to the sentence were a number of onerous "accessories," including the performance of hard and "painful" labor throughout the term, the wearing of a chain at the ankle and wrist; no assistance from friend or relative, no marital authority or parental rights or rights of property, no participation in family council; and after a term in prison, constant surveillance by the criminal magistrate. These "accessories" the court found excessive when inflicted upon one who had committed an offense which might well have harmed no one.

The two dissenters in that case, one of whom was Justice Holmes, did not believe that the constitutional provision was intended to affect the legislative power to determine and apportion punishment, so long as forbidden bodily punishments were not imposed. Nevertheless, the Court has adhered to the majority's interpretation in the ensuing years. Justice White said, in his concurring opinion in *Furman v. Georgia,* 408 U.S. 238, 313–14, 33 L. Ed. 2d 346, 92 S. Ct. 2726 (1972):

> Judicial review, by definition, often involves a conflict between judicial and legislative judgment as to what the Constitution means or requires. In this respect, Eighth Amendment cases come to us in no different posture. It seems conceded by all that the Amendment imposes some obligations on the judiciary to judge the constitutionality of punishment and that there are punishments

and *Woods v. Burton,* 8 Wn. App. 13, 503 P.2d 1079 (1972), *review denied,* 81 Wn.2d 1010 (1973).

that the Amendment would bar whether legislatively approved or not.

■ In *Gregg v. Georgia,* 428 U.S. 153, 175, 49 L. Ed. 2d 859, 96 S. Ct. 2909 (1976), the following, from the concurring opinion of Frankfurter, J., in *Dennis v. United States,* 341 U.S. 494, 525, 95 L. Ed. 1137, 71 S. Ct. 857 (1951), was quoted with approval:

"Courts are not representative bodies. They are not designed to be a good reflex of a democratic society. Their judgment is best informed, and therefore most dependable, within narrow limits. Their essential quality is detachment, founded on independence. History teaches that the independence of the judiciary is jeopardized when courts become embroiled in the passions of the day and assume primary responsibility in choosing between competing political, economic and social pressures."

The court said:

Therefore, in assessing a punishment selected by a democratically elected legislature against the constitutional measure, we presume its validity. We may not require the legislature to select the least severe penalty possible so long as the penalty selected is not cruelly inhumane or disproportionate to the crime involved. And a heavy burden rests on those who would attack the judgment of the representatives of the people.

In ascertaining contemporary standards, the court said, the legislative judgment weighs heavily, because the legislature, rather than the courts, is constituted to respond to the will and consequently the moral values of the people, pointing out that the specifications of punishment are peculiarly questions of legislative policy.

The court said that it could not invalidate a category of penalties because it deemed less severe penalties adequate to serve the ends of penology.

The court there upheld a death sentence for armed robbery and murder. On the other hand, in *Coker v. Georgia,* 433 U.S. 584, 53 L. Ed. 2d 982, 97 S. Ct. 2861 (1977), it held invalid a death sentence which was imposed, pursuant to

statutory authority, for commission of the crime of rape under aggravating circumstances.

Here, the defendant Smith was given a deferred sentence of 5 years. He was placed on probation for a period of 3 years. He does not claim that this sentence constituted cruel and unusual punishment, and indeed there is no case which has even suggested that a deferred sentence or probation could fall within the constitutional prohibition. Rather, his argument is that the statute makes his crime a felony and that such designation is unwarranted by the seriousness of his offense. The statute does not expressly designate the offense a felony, but rather calls it a "crime." The punishment prescribed is provided in RCW 9A.20.020 for class C felonies, and this offense should be regarded as such. Even so, we are shown no authority for the proposition that classification of a person's offense, or the disabilities attached to that classification can, without more, constitute cruel and unusual punishment.

A similar theory was advanced in *Commonwealth v. Leis,* 355 Mass. 189, 243 N.E.2d 898 (1969), where persons charged with possession of marijuana challenged the constitutionality of their indictments. The statute under consideration there, like our statute, provided no minimum penalty. Since the defendants had not been tried, it was not yet determined whether they would be required to serve any sentence or pay any fine. For this reason, the Massachusetts court held that a challenge to the statute upon Eighth Amendment grounds was totally without merit.

In *State v. Fairbanks,* 25 Wn.2d 686, 171 P.2d 845 (1946), where the appellant had been convicted of taking indecent liberties with a female child and sentenced to a term of not more than 20 years, we held that a claim of cruel and unusual punishment could not be considered until his minimum term had been set by the Board of Prison Terms and Paroles. Implicit in all the cases which have come to our attention, with the exception of *Robinson v. California,* 370 U.S. 660, 8 L. Ed. 2d 758, 82 S. Ct. 1417

(1962),[6] is an acknowledgment that, before these constitutional provisions can be invoked, the defendant must show that the punishment which he suffers by reason of the sentence imposed is cruel and unusual.

Smith calls our attention to the fact that a number of states have not seen fit to designate as a felony the offense of possession of 40 grams of marijuana. There are others which have done so. *See* National Governors' Conference, 3 *MARIJUANA: A Study of State Policies and Penalties* (1977) (hereafter *State Policies*). This study indicates that simple marijuana possession is always punished as a felony in two jurisdictions, never punished as a felony in three, and one state, Arizona, leaves the decision whether to treat possession as a felony to the court's discretion.

> Of the remaining 48 jurisdictions, *24* have specified an amount above which possession will always be considered a felony; in the other 24, the distinction still depends solely on the intent of the possessor.

(Italics ours.) *State Policies, supra* at 90.

The report on state marijuana policies further indicates there is little consensus regarding the amount required to elevate possession to felony status. Florida uses 5 grams; Hawaii uses 1 kilogram. The most popular elevation point is 1 ounce (28 grams). *State Policies, supra* at 90, 93. With regard to another factor, maximum imprisonment, it appears the laws also lack uniformity. However, a maximum of 5 years' imprisonment is decreed for the least serious felony in at least eight jurisdictions (including Washington) while at least five impose a maximum of less than 5 years and at least five set the maximum at more than 5 years. *State Policies, supra* at 95.

---

[6]In that case, the statute in question had made it a criminal offense to have the status of drug addict. The court likened this to punishment for having a disease and said that such a punishment would universally be regarded as cruel and inhuman. While the minimum punishment prescribed was only 90 days in prison, the court said *any* punishment would be cruel and unusual, just as it would for the "crime" of having a common cold. There is no contention here that marijuana smoking is a status, cognizable under the *Robinson* doctrine, or that any punishment at all would be cruel and unusual.

Washington's statute makes possession of over 40 grams of marijuana or delivery of any amount punishable by a nonmandatory maximum of 5 years' imprisonment. When we set these provisions alongside nationwide practices, it is evident that the statutes of this state do not conflict with current punishment standards. Moreover, Washington is among the states which have added statutory provisions for the expunging or sealing of the state arrest records of persons who are not convicted. RCW 43.43.730(1); *State Policies, supra* at 108. One who receives probation, as Smith did here, may, upon compliance with the conditions of his probation, have the information or indictment dismissed. RCW 9.95.240.

Under any objective test, the punishment prescribed for possession of 40 grams or more of marijuana is not offensive to current societal values. Likewise, historical attitudes do not reflect an abhorrence of the penalties prescribed. Virtually every state remains committed to a policy of discouraging marijuana use. Federal law, applicable even in states where decriminalization has been achieved, proscribes its possession. 21 U.S.C. § 844(a) (1970). Historically, Washington's citizens who support liberal marijuana laws have consistently failed to gain broad-based citizen support for marijuana legalization or decriminalization initiatives. Evidently a substantial number of citizens are content with the existing laws and are not shocked by the penalty.

█ We cannot say that these citizens, as well as the legislature, are wrong and that the punishment for marijuana possession is *grossly* disproportionate to the offense. A punishment is grossly disproportionate only if the conduct should never be proscribed, *see, e.g., Robinson v. California, supra,*[7] or if the punishment is clearly arbitrary

---

[7]In *Robinson v. California, supra,* a state attempted to punish a person for his status as a drug addict. Possession of a drug is not a status. Also, defendants admit marijuana possession, at least in some circumstances, may be prohibited; thus, *Robinson's* test is inapplicable.

and shocking to the sense of justice. *Kasper v. Brittain,* 245 F.2d 92 (6th Cir. 1957), *cert. denied,* 355 U.S. 834, 2 L. Ed. 2d 46, 78 S. Ct. 54 (1957); *Louisiana Affiliate of Nat'l Organization for the Reform of Marijuana Laws v. Guste,* 380 F. Supp. 404 (E.D. La. 1974), *aff'd,* 511 F.2d 1400 (5th Cir. 1975), *cert. denied,* 423 U.S. 867, 46 L. Ed. 2d 96, 96 S. Ct. 129 (1975).

In *Trop v. Dulles,* 356 U.S. 86, 101, 2 L. Ed. 2d 630, 78 S. Ct. 590 (1958), the Supreme Court held that denationalization for wartime desertion was shocking and violative of this standard because it placed the individual totally at the sufferance of the country in which he finds himself. In *State v. Gitchel,* 5 Wn. App. 93, 486 P.2d 328 (1971), a punishment which required a convicted person to absent himself permanently from the state was held excessive. But no appellate courts, insofar as we have been shown, have been persuaded that a punishment of up to 5 years in prison and/or a fine for marijuana possession is shocking to the sense of justice and totally arbitrary.[8] Nor has any held that conviction of a felony, without regard to the punishment imposed, violates these constitutional provisions.

Considering all the factors that have a bearing on the question, then, we conclude that Smith's punishment, a deferred sentence of 5 years and probation of 3 years, was not grossly disproportionate to the offense.

Accordingly, we hold that the defendant Smith was not subjected to cruel and unusual punishment for his violation of RCW 69.50.401(c).

## III

Defendants also contend RCW 69.50.401(a) and (c) are unconstitutional as applied to possession of marijuana for personal use in one's own home. They argue enforcement of these statutes under the above circumstances invades a right to privacy, and that this invasion is not justified when the prohibited activity is relatively harmless.

---

[8]The theory was rejected in *Louisiana Affiliates of Nat'l Organization for the Reform of Marijuana Laws v. Guste, supra.*

 This contention was raised before the Court of Appeals, Division Two, in *State v. Anderson,* 16 Wn. App. 553, 558 P.2d 307 (1976). Speaking through Pearson, J., that court delivered an opinion upon which we do not believe we can make substantial improvement. We therefore adopt it in pertinent part, with minor modifications, as our own, and set it forth herewith:

> [The defendants urge] this court to hold, first, that there is a constitutional right to privacy in the home encompassing the possession and noncommercial delivery of marijuana, and second, if such a right exists, that the State does not have the compelling state interest necessary to justify regulation in this area. We decline to adopt the position that the right of privacy extends to the possession or delivery of marijuana.
>
> While there is no "right of privacy" found in any specific guaranty of the United States Constitution, the United States Supreme Court has recognized constitutional "zones of privacy" which limit governmental power. *Paul v. Davis,* 424 U.S. 693, 47 L. Ed. 2d 405, 96 S. Ct. 1155 (1976). Only personal rights that can be deemed "fundamental" or "implicit in the concept of ordered liberty" are included in this guaranty of personal privacy. *Roe v. Wade,* 410 U.S. 113, 35 L. Ed. 2d 147, 93 S. Ct. 705 (1973). If the possession and noncommercial delivery of marijuana come within a constitutional "zone of privacy" then there must be a compelling state interest to justify regulation in this area. *Roe v. Wade, supra; cf. Darrin v. Gould,* 85 Wn.2d 859, 540 P.2d 882 (1975).
>
> The overwhelming majority of jurisdictions which have considered the right of privacy and the possession or use of marijuana are in accord. No constitutional right of privacy exists which encompasses the right to possess and use marijuana. *Kreisher v. State,* 319 A.2d 31 (Del. 1974). The constitutional right of privacy does not prevent the legislature from proscribing the possession of marijuana for private use. *State v. Renfro,* ___ Hawaii ___ [56 Haw. 501], 542 P.2d 366 (1975). Michigan laws which prohibit the possession, use and sale of marijuana do not violate the constitutional right to privacy. *People v. Alexander,* 56 Mich. App. 400, 223 N.W.2d 750 (1974). The right to smoke marijuana is not fundamental to the American scheme of justice, it is not necessary to ordered

liberty, and it is not within a zone of privacy. *Commonwealth v. Leis,* 355 Mass. 189, 243 N.E.2d 898 (1969). Possession of marijuana is not a fundamental right guaranteed by the United States Constitution. *State v. Anonymous,* 32 Conn. Supp. 324, 355 A.2d 729 (1976).

Only one jurisdiction has recognized a right to privacy in the home which encompasses the use and possession of marijuana. The Alaska Supreme Court in *Ravin v. State,* 537 P.2d 494 (Alas. 1975) held that no adequate justification exists for the state's intrusion into the citizens' right of privacy by its prohibition of the possession of marijuana by adults for personal consumption in the home. There are at least three grounds for refusing to apply the Alaska ruling in this case.

First, the *Ravin* decision is substantially based upon the strong right to privacy provision of the Alaska Constitution.[1] The Alaska court evidenced the importance of this provision to its ruling when it concluded that "citizens of the State of Alaska have a basic right to privacy in their homes under Alaska's constitution. This right to privacy would encompass the possession and ingestion of substances such as marijuana in a purely personal, non–commercial context in the home . . ." *Ravin v. State, supra* at 504. Washington does not have an equivalent privacy provision in its constitution, nor does case law establish such a strong right to privacy.

A second distinction is that the Alaska court rejected the fundamental right–compelling state interest test, and used a special test to determine the constitutionality of the statute prohibiting the possession of marijuana. The court stated that if it was employing the fundamental right–compelling state interest test "we would hold that there is no fundamental right, either under the Alaska or federal constitutions, either to possess or ingest marijuana." *Ravin v. State, supra* at 502. Washington courts have utilized the fundamental right–compelling state interest test in the past, *see Darrin v. Gould, supra,* and we will not adopt a special test at this time.

Finally, the basis for the *Ravin* decision was the extension of the right of privacy in the home to the possession of marijuana. A leading case on the right of privacy in the home, *Stanley v. Georgia,* 394 U.S. 557, 22 L. Ed. 2d 542, 89 S. Ct. 1243 (1969), involved the possession of obscene material for an adult's personal use in the home.

The United States Supreme Court held that possession of the material was protected in the home because the strong and fundamental First Amendment right to receive information was involved. The Supreme Court noted that its ruling did not infringe upon the power of the state to prohibit the possession of narcotics in the home. Other cases discussing the right to privacy in the home also limit that right to activities involving important or fundamental rights.[2] Possession of marijuana is not a fundamental right, *State v. Anonymous, supra,* and it is not tantamount to the exercise of a First Amendment right. Additionally, no authority or logic supports the contention that a right to deliver marijuana is [any] more fundamental than the right to possess it. Therefore, we refuse to extend the right of privacy in the home to either the possession or delivery of marijuana.

The *Ravin* decision is not persuasive and we adopt the position of those jurisdictions holding that statutes similar to RCW 69.50.401(a) and (d) do not unconstitutionally interfere with any right to privacy.

[1]Article 1, § 22 of the Alaska Constitution provides, in part: "The right of the people to privacy is recognized and shall not be infringed."

[2]*See generally, Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 37 L. Ed. 2d 446, 93 S. Ct. 2628 (1973); *United States v. Orito,* 413 U.S. 139, 37 L. Ed. 2d 513, 93 S. Ct. 2674 (1973). *Cf. State v. Elliott,* 88 N.M. 187, 539 P.2d 207 (1975).

The trial courts and the Court of Appeals correctly refused to hold the statutes unconstitutional.

## IV

Defendant Anderson raises an additional assignment of error peculiar to his case. He asserts the circumstances of his arrest warrant a finding of police misconduct or, at a minimum, an instruction informing jurors that police activity surrounding an arrest must be in good faith and not violative of public policy.

Prior to defendant Anderson's arrest, he was contacted at home by a police undercover agent. The agent's plan was to pose as a drug dealer attempting to deliver two 1–pound

packages of marijuana to some other party. The agent subsequently executed this plan and contacted Anderson. Anderson, upon seeing the marijuana, commented that it looked like "good stuff". The agent replied it was indeed quality marijuana. When Anderson further inquired whether the agent would be willing to sell the marijuana, the agent indicated he would not, because it was previously committed to another person. After this, Anderson agreed that the agent could come back at a later date and they could work out an arrangement for the sale of marijuana.

The agent returned on two later occasions, but neither time was opportune for discussing business. On a third occasion, however, the agent and Anderson discussed the drug price, and Anderson indicated his desire was to purchase between 1 and 3 pounds of marijuana. After this manifestation of intent, the agent asked Anderson if he had any marijuana in the house. When the agent received an affirmative reply, he suggested the two of them ought to smoke some in order to get better acquainted. Anderson declined to smoke, but gave the agent a small quantity of marijuana and invited him to take some with him. There is conflicting evidence as to whether the agent ever smoked this marijuana, but it is undisputed that Anderson possessed marijuana and also delivered the substance to the agent.

Sometime later a search warrant for Anderson's home was obtained based upon the presence of marijuana in that location. Upon execution of the warrant, marijuana in a quantity of less than 40 grams was confiscated, and Anderson was charged with the offenses of delivery and possession of marijuana.

It is Anderson's contention that, at trial, the court erred by refusing to give this proposed jury instruction:

You are instructed that a criminal defendant invoking the defense of entrapment must show that the criminal design originated in the mind of the police officer and not with the accused, and that the accused was lured or

induced to commit a crime he had not intended to commit. If the crime originated in the mind of the accused, an officer may afford the accused an opportunity to commit the crime, and, when acting in good faith and not acting against public policy, make use of deception.

The trial court judge gave instruction No. 8, which reads:

You are instructed that Entrapment is a defense to the charge against the defendant, and if established entitles the defendant to an acquittal.

Entrapment occurs where the criminal design originates in the mind of the police officer or informer and not the accused, and the accused is lured or induced into committing a crime he had no intention of committing.

The mere use of a decoy or informer to present an individual with an opportunity to commit a crime does not in itself constitute entrapment.

■ The majority view in entrapment cases treats police conduct as secondary *unless* the conduct serves to entrap an unwary defendant into committing a crime he had no intention of committing. *United States v. Russell,* 411 U.S. 423, 36 L. Ed. 2d 366, 93 S. Ct. 1637 (1973); *State v. Gray,* 69 Wn.2d 432, 418 P.2d 725 (1966); *State v. Emerson,* 10 Wn. App. 235, 517 P.2d 245 (1973). It has never been supposed that the jury must be instructed to weigh public policy or good faith in reaching its decision on whether the defense of entrapment has been made out. Rather, under Washington law its deliberations are to be directed to the question of whether the criminal design originated in the mind of law enforcement officials who lured or induced the defendant to commit a crime which he otherwise had not intended to commit.

The jury instruction given by the court correctly reflects this concept and the law regarding the defense of entrapment. Failure to give the proposed instruction was not error.

Defendant further argues that as a matter of law the police conduct was contrary to public policy.

■ In affording a suspect with an opportunity to violate the law, police may use some subterfuge. For example,

an officer may pose as a drug dealer, fence, or prostitute. *State v. Gray, supra.* In *United States v. Russell, supra,* the defendant argued that the government's agent who supplied a scarce ingredient had become so involved in the criminal activity that any prosecution for manufacturing an illegal drug violated fundamental principles of due process. The United States Supreme Court, noting the necessity of the agent's illicit participation, stated that the conduct was not so shocking as to violate fundamental fairness.

The conduct of the officer in Anderson's case, which, distasteful as all subterfuge is, can hardly be said to have been so shocking as to violate fundamental fairness.

## V

Defendants Redwine also raise additional assignments of error peculiar to their case. They contend the search warrant for their home is constitutionally infirm, that the police violated the knock and notice statute, and that the sentences were unfair.

The defendants Redwine urge that the trial court erred in admitting in evidence the fruits of a search conducted pursuant to a warrant issued by a magistrate. The warrant authorized a search of the defendants' home and of the fenced yard behind it, in which an officer had observed marijuana plants growing. He testified before the magistrate that there was "no question" but that the plants were marijuana plants. The officer's inspection of the yard had been made in response to a complaint that such plants were growing in it. The Redwines contend that the officer's opinion of the identity of the plant was not sufficient to support a finding of probable cause to search. They suggest that a chemical test should have been made. Further, they maintain that information which the officer received from an informant was not shown to be reliable.

We find no merit in these contentions. The officer satisfied the magistrate that he had sufficient familiarity with marijuana plants to recognize one when he stood within 10 feet of it, as he did in this case. There is no suggestion that

a marijuana plant is not distinctive enough to be recognized as such. As for the reliability of the officer's informant, that is rendered immaterial by the fact that the officer himself observed the plants growing.

Federal and state constitutional requirements for search warrants are met when the issuing magistrate has, considering all the facts and circumstances sworn to by the police officer seeking the warrant, good reason to believe that criminal activity has occurred. *State v. Patterson*, 83 Wn.2d 49, 515 P.2d 496 (1973). As we said there, if the affidavit or testimony reveals nothing more than a declaration of suspicion and belief, it is legally insufficient; but if the underlying facts or circumstances are stated, as they were here, and the informant is reliable, and if the alleged facts show that a crime has probably been committed, the magistrate has before him evidence sufficient to justify the issuance of a warrant.

Where, as here, the officer himself has observed the incriminating evidence, the element of reliability is established, assuming the magistrate has confidence in the integrity of the officer.

The issuance of a search warrant is a matter of judicial discretion, and this court reviews its exercise only for abuse.

There can be no question but that the magistrate was justified in accepting the officer's opinion that what he had seen growing in the yard was marijuana. The testimony of the informant was unnecessary to establish this fact. This showing was sufficient to obtain a warrant to search the yard. Whether it also justified a search of the house we need not decide. The evidence shows that there were 178 plants growing in the yard. We can take judicial notice that this number of plants would produce more than 40 grams of usable drugs. Thus the State's prima facie case was established by the evidence of the number of plants growing in the yard, which were admittedly in the possession of the defendants Redwine. Thus, even though the admission of the fruits of the search of the house was error, which we do not decide, it was harmless error.

For this reason also, we need not consider a further contention that the search of the unoccupied house was rendered invalid because one of the officers involved failed to knock before entering.

Finally, the Redwines contend their sentences lacked an appearance of fairness and were in fact unfair because the sentences were inspired by a suspicion the Redwines were dealing in drugs.

■■■ Appellate courts may review a trial court's imposition of sentence for abuse of discretion. Discretion is abused only when it can be said no reasonable person would adopt the view which was adopted by the trial court. *State v. Derefield,* 5 Wn. App. 798, 491 P.2d 694 (1971). Both Redwines were given deferred 5–year sentences to state correctional institutions. David Redwine was placed on probation for 3 years and was sentenced to 365 days in jail and fined $500. Loralyn Redwine was placed on probation for 2 years and sentenced to 90 days in jail. In both cases, the court reserved the right to suspend a portion of the jail sentence and indicated that it would do so. They state that the judge customarily did not impose a sentence of more than 60 days for possession of marijuana. It is contended that the judge was influenced by his belief that the Redwines were dealing in drugs, which it is alleged was not the case. The judge's remarks on sentencing indicate that he was concerned with David Redwine's prior juvenile record, as well as with the amount of marijuana being grown by the Redwines. He imposed jail sentences because he believed that a fine alone would not deter further violations.

We cannot say that, having this consideration in mind, the trial judge abused his discretion in prescribing the sentences.

The convictions are affirmed.

STAFFORD, WRIGHT, BRACHTENBACH, and HOROWITZ, JJ., concur.

UTTER, C.J. (concurring in part; dissenting in part)—I concur with the majority in affirming Anderson's conviction for delivery of a controlled substance in violation of RCW 69.50.401(a). Anderson's constitutional challenge to the conviction is limited to a claim of privacy in the performance of the unlawful conduct. Whatever may be the privacy claim of individuals in possession of marijuana for personal use, this claim does not protect those who would manufacture or deliver the substance.

I do agree with Justice Dolliver that the convictions of Smith and the Redwines for possession of marijuana under the terms of RCW 69.50.401(c) (now RCW 69.50.401(d)) violate federal and state prohibitions on cruel and unusual punishments.

I do not reach the equal protection and privacy claims of those convicted for possession of marijuana, nor the alternative constitutional claims regarding delivery which are not before us.

DOLLIVER, J. (concurring in part; dissenting in part)—Marijuana is an intoxicant. It is one of three major recreational drugs used in the United States; the other two are tobacco and alcohol. It is smoked regularly by nearly 15 million Americans; probably in excess of 30 million citizens have tried it. National Institute on Drug Abuse, Secretary of Health, Education and Welfare, 6th Annual Report to United States Congress, *Marihuana and Health* (1976). In every state there is some penalty for the possession of marijuana. 3 National Governors Conference Research and Case Studies, *Marijuana: A Study of State Policies and Penalties* 99–104 (1977). It is probable "no other 'crime' is prosecuted so rarely in relation to the number of times it is committed, and no other conduct is so consistently rejected as being 'criminal' by so many people." Soler, *Of Cannabis and the Courts: A Critical Examination of Constitutional Challenges to Statutory Marijuana Prohibitions*, 6 Conn. L. Rev. 601, 686 (1974). In Washington, a person who possesses more than 40 grams (28 grams equals 1 ounce) of

marijuana may be arrested and convicted of a felony with a maximum sentence of 5 years in a state prison, a fine of up to $10,000, or both (RCW 69.50.401(c)) (now RCW 69.50-.401(d)), and will lose certain rights. *See, e.g.,* RCW 29.01-.080, RCW 42.04.020, RCW 4.44.160 and Const. art. 6, § 3. *See generally* Grant, *The Collateral Consequences of a Criminal Conviction,* 23 Vand. L. Rev. 929 (1970).

I agree with the majority that constitutional rights of equal protection and privacy are not offended by RCW 69.50.401(a), (c). I do not, however, agree with the majority as to the inapplicability of the eighth amendment to the United States Constitution and Const. art. 1, § 14. I would hold RCW 69.50.401(c) as it applies to mere possession of marijuana to violate these constitutional provisions which prohibit cruel and unusual punishment. I do not contend RCW 69.50.401(a), which makes it a crime "to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance", violates either the federal or state constitutions.

While the majority recites both the history of cruel and unusual punishment and the general view taken by the courts for application of the constitutional restraint, it fails to delineate fully the tests developed by courts to trigger the application of the constitutional requirements or to measure RCW 69.50.401(c) against those tests.

Although legal literature and cases on the use of the Eighth Amendment are meager, some general principles have evolved. *See, e.g.,* Note, *The Cruel and Unusual Punishment Clause and the Substantive Criminal Law,* 79 Harv. L. Rev. 635 (1966); Soler, *supra* at 676; Comment, *The Eighth Amendment, Beccaria, and the Enlightenment; An Historical Justification for the Weems v. United States Excessive Punishment Doctrine,* 24 Buffalo L. Rev. 783 (1975); Comment, *Marijuana Possession and the California Constitutional Prohibition of Cruel or Unusual Punishment,* 21 U.C.L.A. L. Rev. 1136 (1974); *Coker v. Georgia,* 433 U.S. 584, 53 L. Ed. 2d 982, 97 S. Ct. 2861 (1977); *People v. Lorentzen,* 387 Mich. 167, 194 N.W.2d 827

(1972); *In re Lynch,* 8 Cal. 3d 410, 503 P.2d 921, 105 Cal. Rptr. 217 (1972); *see generally Length of Sentence as Violation of Constitutional Provisions Prohibiting Cruel and Unusual Punishment,* Annot., 33 A.L.R.3d 335 (1970).

In *Weems v. United States,* 217 U.S. 349, 367, 54 L. Ed. 793, 30 S. Ct. 544 (1910), the Supreme Court stated:

[I]t is a precept of justice that punishment for crime should be graduated and proportioned to offense.

In *State v. Fairbanks,* 25 Wn.2d 686, 689, 171 P.2d 845 (1946), we said:

It may be conceded that duration of imprisonment fixed as a penalty may be so incommensurate with the gravity of the offense committed as to be violative of this provision of the state constitution and of the kindred provision contained in the eighth amendment to the Federal constitution.

Not only must the proportionality of the punishment to the offense be considered, it must be considered "in the light of contemporary human knowledge". *Robinson v. California,* 370 U.S. 660, 666, 8 L. Ed. 2d 758, 82 S. Ct. 1417 (1962). *See also Trop v. Dulles,* 356 U.S. 86, 2 L. Ed. 2d 630, 78 S. Ct. 590 (1958). In a recent review of the Eighth Amendment, the Supreme Court said:

[T]he Eighth Amendment bars not only those punishments that are "barbaric" but also those that are "excessive" in relation to the crime committed. Under *Gregg* [*Gregg v. Georgia,* 428 U.S. 153, 49 L. Ed. 2d 859, 96 S. Ct. 2909 (1976)], a punishment is "excessive" and unconstitutional if it (1) makes no measurable contribution to acceptable goals of punishment and hence is nothing more than the purposeless and needless imposition of pain and suffering; or (2) is grossly out of proportion to the severity of the crime. A punishment might fail the test on either ground.

*Coker v. Georgia, supra* at 592. In this case, only the question of proportionality is relevant.

The question is not whether the state can or should regulate or discourage the use of marijuana; both are clearly within its power. Nor is the question before us the social

desirability of discouraging the use of marijuana. Rather, it is whether the punishment chosen by the legislature for violating its statutory regulations as to the possession of over 40 grams of marijuana is disproportionate to the offense when tested against "evolving standards of decency". *Trop v. Dulles, supra* at 101.

As to the question of cruel and unusual punishment, the trial court concluded:

> Finally, the defense has argued that the felony statute, in providing for a prison sentence of five years, constitutes cruel and unusual punishment. Again, the authorities cited by counsel do not establish that the defendant has standing to make this argument prior to conviction and sentence. Notwithstanding, as with the other constitutional arguments raised by the defendant, the hazards presented to society by the use of marijuana do not permit this court to conclude that RCW 69.50.401(c) is not fairly and substantially related to a legitimate legislative purpose.

The trial court's use of the rational relationship test may have been appropriate for determining whether the statute violated equal protection guaranties. It is not, however, appropriate for determining whether the sentence imposed under the statute is grossly disproportionate to the crime and constituted cruel or unusual punishment. The proper analysis to determine whether the felony classification for conviction and the maximum 5–year sentence and $10,000 fine is excessive or overly severe is a threefold test which appears to be generally accepted for determining if the punishment is disproportionate to the crime and thus violative of the prohibitions against cruel and unusual punishment. *See In re Lynch, supra; In re Jones,* 35 Cal. App. 3d 531, 110 Cal. Rptr. 765 (1973); *In re Grant,* 18 Cal. 3d 1, 553 P.2d 590, 132 Cal. Rptr. 430 (1976); *Downey v. Perini,* 518 F.2d 1288 (6th Cir. 1975), *vacated and remanded on other grounds,* 423 U.S. 993, 46 L. Ed. 2d 367, 96 S. Ct. 419 (1975); *State v. Mitchell,* 563 S.W.2d 18, 28 (Mo. 1978) (Seiler, J., dissenting); 21 U.C.L.A. L. Rev., *supra* at 1146.

Those tests (only the last of which is even mentioned by the majority) are:

1. The degree of danger the offender and the subject matter of the offense, in this case marijuana, present to society;

2. A comparison of the punishment for possession of marijuana with the punishment for more serious crimes and for offenses of a similar nature; and

3. A comparison of the punishment for marijuana possession in Washington with the punishment for the same offense in other jurisdictions.

I

I see nothing to be gained by arguing with the majority or the trial court over the evidence as to the dangers of marijuana nor is it necessary to do so. The views of the plaintiffs and defendants were fully documented before the trial court, the trial court made a thorough review of the evidence, and its findings contained in the memorandum decision are sufficient. The following documents were admitted in evidence before the trial court: National Institute on Drug Abuse, United States Department of Health, Education, and Welfare, *Marijuana Research Findings: 1976* (Petersen ed. 1977); L. Grinspoon, *Marijuana Reconsidered* (2d ed. 1977); National Institute on Drug Abuse, Secretary of Health, Education, and Welfare, 4th through 6th Annual Reports to the United States Congress, *Marijuana and Health* (1974–76); National Commission on Marihuana and Drug Abuse, 1st Report, *Marihuana: A Signal of Misunderstanding* (Shafer Rep., 1972); National Commission on Marihuana and Drug Abuse, 2d Report, *Drug Use in America: Problem in Perspective* (Shafer Rep., 1973); Consumers Union Report, *Licit & Illicit Drugs* (Brecher ed. 1972); Report of the Commission of Inquiry into the Non–Medical Use of Drugs, *Cannabis* (Canada 1972); L. Miller, *Marijuana Effects on Human Behavior* (1974); Hearings Before the Subcommittee to Investigate the Administration of the Internal Security Act and other

Internal Security Laws of the Senate Committee on the Judiciary, 93d Cong., 2d Sess., *Marihuana–Hashish Epidemic and Its Impact on United States Security* (1975); G. Nahas, *Keep Off the Grass* (1976); J. Tinklenberg, *Marijuana and Health Hazards* (1975); M. Braude & S. Szara, 1 and 2 *Pharmacology of Marihuana,* A Monograph of the National Institute on Drug Abuse (1976); G. Nahas, *Marihuana Chemistry, Biochemistry, and Cellular Effects* (1976).

In its decision, the trial court said:

It is apparent from the evidence presented by both sides in this proceeding that marijuana has been grossly misunderstood by many Americans of both high and low stations in life.

Despite exhaustive research by the medical profession and other scientists in this country and abroad in recent years, and observations of entire cultures of marijuana smokers over generations around the world, there does not appear to be a single documented case of permanent physiological or psychological harm from this drug. Clearly, marijuana is most notable for the psychological "high" it produces, a form of intoxication similar in some respects to that produced by alcohol. It is this "euphoria" which has encouraged in excess of 30 million people in this country to try it, and which keeps perhaps half of that number coming back.

The intensity of the effect of the drug is dependent upon the quantity consumed, although it is accepted that tolerance to the drug is developed with regular use, and there often is a moderate seeking of higher dosage levels. However, there is not an addictive quality, and even psychological dependency is very unusual. The rare case of anything related to withdrawal symptoms seems to occur with only extremely heavy usage, and even then moderate irritability seems to be the only apparent symptom.

The "stepping–stone" theory as a characteristic of marijuana use simply is not true. There is no evidence that marijuana leads one on to the use of other drugs. No cause and effect relationship exists. The fact that certain personality types may use marijuana and then go on to other drugs cannot bolster any condemnation of marijuana. It would seem more logical to suggest that many

people who might seek out relatively more dangerous drugs do not do so by virtue of their "discovery" of marijuana.

Marijuana does not make the user more violent or aggressive. To the contrary, the effect of marijuana intoxication is to relax and make one less aggressive.

No evidence has been developed to substantiate the frequently stated belief that marijuana use causes an increase in criminal activity of any kind, much less violent crime. However, to say that there is no cause and effect relationship between marijuana and crime is not to say that some people who use and enjoy marijuana will not steal and rob to obtain the funds with which to buy the drug. Particularly for young people, marijuana is not inexpensive, and there is uncontroverted testimony in this record of one former drug user that regularly stole to obtain the wherewithal to buy marijuana.

Although it may be safe to say that moderate or even moderately heavy use of marijuana has not been shown to be harmful to the human organism, that is not the same thing as saying that science may not soon show that it does cause harm as studies and research techniques improve. Marijuana is a psychedelic drug and it is presently well established that it does have a measurable effect on humans and animals. Already, reputable scientists are convinced that the burning vegetable matter of which marijuana is composed will be shown to be cancer producing in much the same way as tobacco. However, this concern is moderated somewhat by the fact that moderate use of two or three joints per day is not comparable to the typical cigarette smoker's consumption of twenty to forty cigarettes per day.

Marijuana use does make the heart work harder, and increases the demand for oxygen. It has been shown to increase pain in angina patients, and carries a real risk for heart patients, and for those who are unaware that they have heart problems. It does reduce blood pressure.

Although low dose smoking does dilate or open lung passages, continued regular use over several weeks does cause cellular irritation and bronchitis, both of which impair lung function.

Although effects on the body's immune response system, chromosomes, and endocrine system have been demonstrated, at normal levels of usage there is as yet no

clinical evidence that the user is more likely to contract illness or conceive defective children than the non-using population, and despite some contradictory studies, there is no reliable evidence that even heavy long-term use of marijuana causes any permanent brain damage or permanent impairment of brain function.

It is important to note that the studies which have permitted the foregoing conclusions have been very largely based upon studies of healthy male subjects in the prime of life. Very little research has been done on groups for whom harm from marijuana use may prove a reality. These would include women, especially those in their child bearing years. Children, and especially those just achieving sexual maturity, have not been studied. Also, those of advanced years and those with known bodily infirmities have not received careful attention. Finally, little is known about the interaction of this drug with other drugs in the body, an area deserving of substantial additional attention.

The foregoing review of the known or suspected harm from marijuana would seem to provide an inadequate foundation on which to base a felony statute. The remote prospect of some future harm does not seem to constitute a fair and substantial basis for such an enactment. If the statute is to stand, its justification must be found in the acute or immediate effect of the drug, and those effects will now be examined.

Thus, the trier of fact found the "harm" alleged or suspected from marijuana use was not a sufficient basis for a statute which made possession of more than 40 grams a felony. Rather, in upholding the statute the trial court relied on what it called the "acute or immediate effect of the drug". In its concluding summary, the trial court detailed these effects as follows:

Marijuana creates a euphoric state of intoxication which impairs learning, incentive, efficiency, and motor coordination, matters clearly affecting the health, education and welfare of the people of the state.

In summary, the trial court found: Marijuana has never been shown to cause physiological or psychological harm. It is not addictive. Users do not suffer withdrawal symptoms. There is no evidence the use of marijuana leads to the use

of other drugs. Marijuana does not make the user more violent or aggressive. There is no cause and effect relationship between marijuana and criminal activity. There is no clinical evidence that a marijuana user is more likely to become ill or conceive defective children than nonusers. There is no reliable evidence that even heavy, long–term use of marijuana causes any permanent brain damage or permanent impairment of brain functions. *See also State v. Zornes*, 78 Wn.2d 9, 475 P.2d 109 (1970).

This is an impressive catalog of what marijuana does not do. The findings of the trial court strike directly at the many emotional assertions and superstitions as to the nature of marijuana and marijuana use and show them to be false. The court did find, however, that marijuana does create a euphoric state of intoxication in which learning, incentive, efficiency and motor coordination are impaired. Does this degree of danger to a marijuana user and the surrounding society in any way justify 5 years in a state prison, a $10,000 fine and the loss of a person's rights? I cannot believe it does. I do not disagree that there are some dangers associated with the use of marijuana and that the people, acting through the legislative process, may respond to those dangers. Nor do I contend policies and programs to discourage the use of marijuana are inappropriate or improper. Furthermore, it may well be there are some as yet undiscovered and unverified long–term dangers. But it hardly seems like the hallmark of a civilized society nor is it constitutional "in the light of contemporary human knowledge" (*Robinson v. California, supra* at 666) to obtain public awareness of the dangers, known or unknown, of marijuana by branding persons felons for the mere possession of anything over 40 grams of the substance, subjecting them to the prospect of 5 years in a state prison, a $10,000 fine, and the certainty of the loss of the right to vote, the right to hold public office, and other "civil rights".

We have long since decided with reference to the possession of other substances, the ingestion of which causes harmful effects, that felony statutes are not appropriate.

Such common and easily available household drugs as alcohol, tobacco and caffeine—the long-term deleterious effects of which are well documented and well known—come readily to mind. *See* Soler, *Of Cannabis and the Courts: A Critical Examination of Constitutional Challenges to Statutory Marijuana Prohibitions,* 6 Conn. L. Rev. 601, 617-19 (1974). Once the underbrush of superstition and false information has been swept aside as has been so ably done by the trial court, the penalty, given the danger to the offender and to society, is totally out of proportion to the offense. To use the language of the majority, this "punishment is . . . shocking to the sense of justice".

In this connection, it may be noted there is another vegetable substance common to Washington possessed in varying quantities—invariably over 40 grams—by large numbers of our citizens. It is poisonous if ingested and can cause death. *See* 6 Encyclopaedia Britannica, *Macropaedia Noxious Ericads* 955 (15th ed. 1974). The response in this state has been not to send people to prison for possession of this plant, but rather to warn them against the danger and, by action of the legislature, to declare it the State Flower. It is the rhododendron. *See* RCW 1.20.030.

## II

Next, how does the punishment for possession of over 40 grams of marijuana compare with the punishment for more serious crimes in this state, or for offenses of a similar nature? No mention of this test is made by the majority. Even a cursory reading of RCW 9A gives convincing evidence of the disproportionate nature of RCW 69.50.401(c). All of the following offenses, each far more serious than possessing over 40 grams of marijuana, are class C felonies and subject a guilty person to 5 years in the state penitentiary or a maximum fine of $5,000 or both: second-degree manslaughter, when, with criminal negligence, the death of another is caused, RCW 9A.32.070; third-degree assault, RCW 9A.36.030; second-degree theft, RCW 9A.56.040; unlawful imprisonment, RCW 9A.40.040; extortion in the

second degree, RCW 9A.56.130; first–degree reckless burning, RCW 9A.48.040; second–degree malicious mischief, RCW 9A.48.080; riot with a deadly weapon, RCW 9A.84-.010; forgery, RCW 9A.60.020; taking of a motor vehicle, RCW 9A.56.070; bigamy, RCW 9A.64.010; incest, RCW 9A.64.020.

I find it grossly disproportionate to include the mere possession of over 40 grams of marijuana in the same category as the crimes cataloged above. Furthermore, except for a third conviction for unlawful use of the official liquor control board seal (RCW 66.44.120), none of the penalties for violating the alcoholic beverage control statutes (RCW 66.44) is more than a gross misdemeanor. The known dangers of alcohol to an individual and society, which far exceed the "acute or immediate effect of marijuana" are too well known to require review here. If, on the other hand, a person at home had a meeting aimed at overthrowing the government by force (RCW 9.05.040); possessed a collection of switchblades or brass knuckles (RCW 9.41.250) or dangerous inhalants for sale (RCW 9.47A.050); had beaten someone in a simple assault (RCW 9A.36.040); or discharged a gun in the neighborhood (RCW 9.41.230); or had driven on the public highway while intoxicated, clearly endangering the lives of others (RCW 46.61.515), no felony charge would be made. RCW 69.50.401(c) does not meet the second test for constitutionality.

## III

How does the penalty in Washington compare with other states? While the data used by the majority in comparing state statutes is accurate, it approaches the question from the wrong perspective. It is far more illuminating to list those states where the mere possession of the amount of marijuana, or less, which is proscribed by Washington law can result on the first offense in a penalty of 5 years in prison. There are only 10 states, including Washington, or 20 percent, which have such a severe penalty. In only 6 states (12 percent), including Washington, is the fine for

the first offense, regardless of the prison term, $10,000 or more. Additionally, while RCW 69.50.401 distinguishes the various activities associated with marijuana use in our society, it does not impose less stringent penalties for mere possession of the controlled substance. Most other states impose greater penalties for sale and possession with intent to distribute than for mere possession. Only 6 states (12 percent), including Washington, fail to make this distinction. In contrast to the views of the majority, it does appear that Washington is in a small minority among the states in the severity of its penalties for mere possession of marijuana.

The majority contends the strictures of the article 1, section 14 provision should not apply unless the punishment inflicted is in fact cruel and unusual; that mere conviction is not enough. *State v. Fairbanks,* 25 Wn.2d 686, 171 P.2d 845 (1946). In raising a proportionality challenge under the Eighth Amendment, a defendant may challenge the sentence actually imposed on him as unconstitutionally disproportionate to the offense which he committed. *See, e.g., State v. Fairbanks, supra; Davis v. Davis,* 601 F.2d 153 (4th Cir. 1979). The defendant also can challenge a criminal statute on its face as setting a penalty that is unconstitutionally disproportionate to the offense proscribed by the statute. *See, e.g., Gallego v. United States,* 276 F.2d 914, 918 (9th Cir. 1960); *see also, e.g., Downey v. Perini,* 518 F.2d 1288, 1291–92 (6th Cir. 1975), *vacated and remanded on other grounds,* 423 U.S. 993, 46 L. Ed. 2d 367, 96 S. Ct. 419 (1975); *In re Lynch,* 8 Cal. 3d 410, 503 P.2d 921, 105 Cal. Rptr. 217 (1972), explained in *People v. Wingo,* 14 Cal. 3d 169, 175–76, 534 P.2d 1001, 121 Cal. Rptr. 97 (1975); *see generally* Annot., 33 A.L.R.3d 335, at section 4 (1970).

Defendant Smith raises both types of challenges in this case. He claims that (1) the penalty actually imposed on him—the imposition of felony status and consequent loss of civil liberties—is unconstitutionally disproportionate to the offense which he committed; and (2) RCW 69.50.401(c) (now (d)), on its face violates the Eighth Amendment

because the statutorily prescribed penalty (imprisonment for 5 years and/or $10,000) is unconstitutionally disproportionate to the offense of simple possession of more than 40 grams of marijuana.

I believe the better rule is that the maximum term permitted by the statute—5 years—must be considered rather than the actual sentence imposed by the judge or the action of the Board of Prison Terms and Paroles (see *In re Lynch, supra; Downey v. Perini, supra; Hart v. Coiner,* 483 F.2d 136 (4th Cir. 1973), *cert. denied,* 415 U.S. 983, 39 L. Ed. 2d 495, 94 S. Ct. 1454 (1974); *see also State v. Lee,* 87 Wn.2d 932, 558 P.2d 236 (1976). Even if the maximum sentence is not imposed, "[i]f . . . the sentence prescribed by [the] statute is cruel and unusual within the meaning of the Eighth Amendment, the statute itself is unconstitutional and any sentence imposed thereunder must be set aside". *Gallego v. United States,* 276 F.2d 914, 918 (9th Cir. 1960). Defendant is unable to enforce any expectation for a deferred execution of the sentence and probation. Therefore, the court must look to the maximum sentence to which defendant is liable and not to any conditional deferral granted by the trial court. *Rummel v. Estelle,* 445 U.S. 263, 63 L. Ed. 2d 382, 100 S. Ct. 1133 (1980), *and see also* Powell, J., dissenting at page 285. Nevertheless, even under the majority position, the Eighth Amendment and article 1, section 14 would be violated. Upon conviction under RCW 69.50.401(c) (now (d)), a person becomes a felon. RCW 9A.04.040. To assume the status of a convicted felon, to lose the right to vote (Const. art. 6, § 3; RCW 29.01.080), or to hold public office (RCW 42.04.020), and your "civil rights" (*see* 23 Vand. L. Rev. 929 (1970)); RCW 4.44.160; 28 U.S.C. §§ 1861, 1865 (1976) (service on juries), simply for mere possession of over 40 grams of marijuana does not comport with current standards of decency.

I do not believe RCW 69.50.401(c) meets any of the three tests of constitutional validity under the cruel and unusual punishment clauses of the United States and Washington

constitutions. While the legislature is accorded broad discretion in enacting penal statutes and in specifying punishment for crime, and while we must give deference to the legislature as it makes its determinations, under the constitution the final judgment as to whether the punishment decreed by the legislature exceeds constitutional limits is a judicial function. When a statute comes before us which imposes penalties disproportionate to the offense we are bound to hold that statute unconstitutional. To punish a person by 5 years in a state prison and a $10,000 fine and to take away that person's rights for mere possession, and no more, of over 40 grams of marijuana does, in my opinion, violate both the Eighth Amendment and Const. art. 1, § 14.

I would not hold and do not contend that criminal penalties cannot be assessed for possession of marijuana. It should be emphasized that a declaration that RCW 69.50-.401(c) is unconstitutional does not remove all criminal sanctions for possession. RCW 69.50.401(d) (now (e)), which makes possession of *any* amount of marijuana a misdemeanor meets the requirement of the Eighth Amendment and Const. art. 1, § 14, and would continue to be valid. The penalty is "imprisonment in the county jail for not more than ninety days, or by a fine of not more than two hundred and fifty dollars". RCW 9.92.030. While the wisdom of this penalty may be questioned by some, since its constitutionality is clear the determination is properly within the province of the legislature. *See Furman v. Georgia,* 408 U.S. 238, 258, 280, 33 L. Ed. 2d 346, 92 S. Ct. 2726 (1972) (Brennan, J., concurring).

I would declare RCW 69.50.401(c) (now (d)) unconstitutional and reverse all convictions under this section of the statute. I would affirm the other convictions.

HICKS and WILLIAMS, JJ., concur with DOLLIVER, J.