John KASPER, Appellant,

v.

D. J. BRITTAIN, Jr., et al., Appellees.

No. 13046.

United States Court of Appeals
Sixth Circuit.

June 1, 1957.

See also, 245 F.2d 97.

J. Benjamin Simmons, Washington, D. C., for appellant.

Donald B. MacGuineas, Washington, D. C. (W. B. Lewallen, Sidney Davis, Walter E. Fischer, Clinton, Tenn., George Cochran Doub, Warren Olney, III, Warren F. Schwartz, Dept. of Justice, Washington, D. C., John C. Crawford, Jr., Knoxville, Tenn., on the brief), for appellees.

Before SIMONS, Chief Judge, and McALLISTER and MILLER, Circuit Judges.

SIMONS, Chief Judge.

The appellant was found guilty of a criminal contempt by the district judge in wilfully disregarding and violating the court's order of August 29, 1956, in a school segregation case. He was sentenced to be confined in some institution to be designated by the Attorney General of the United States for a period of one year, and was admitted to bail pending appeal. He challenges the order on constitutional, jurisdictional and procedural grounds.

The background of the contempt proceeding is important. On April 26, 1952, the district judge dismissed a proceeding against the County Board of Education of Anderson County, Tennessee, for a declaratory judgment and injunction, restraining it from continuing a custom denying colored children rights guaranteed them by the Fourteenth Amendment to the Constitution of the United States. No State statute was involved. McSwain v. County Board of Education, D.C., 104 F.Supp. 861. On appeal to this court, judgment was reversed and the case remanded to the district court for further proceedings, in conformity with the decision of the Supreme Court in Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873. In compliance, the district court issued an injunctional order, requiring the appellees to desegregate the High Schools of Anderson County by the fall term of 1956. The appellees accepted the order, as required by the law of the land, and proceeded to comply with it. Twelve Negroes were enrolled in the Clinton, Tennessee, High School at the beginning of the fall term,

without disrupting ordinary school routine and without picketing or violence of any kind.

This was the situation in Clinton when on Saturday, August 25, 1956, the appellant arrived from somewhere in the East. His declared purpose, established cumulatively by many witnesses, was to run the Negroes out of the school or to cause Brittain, its principal, to resign his job, and so to violate the court's desegregation order. To achieve that purpose he organized a movement designed to implement it. On Monday, August 27th, mass picketing began in front of the school and by Wednesday, August 29th, the crowd had grown and become menacing, so that both students and faculty were terrorized, and one Negro pupil had been attacked. When urged to desist, appellant replied that the court order need not be obeyed and stated to Brittain "If you keep this up, there is going to be bloodshed."

On August 29th, the appellees petitioned the court for injunctive relief, alleging that the appellant, in concert with others, had begun the organization of a movement to prevent the petitioners from obeying the desegregation order, of which he had full knowledge, and urging his following to ignore it and to do all they could to impede, obstruct and intimidate the appellees from carrying it out. The court issued an ex parte temporary restraining order, prohibiting the appellant and others from further hindering, obstructing, or in any way interfering with the carrying out of the court's order and from picketing Clinton High School, either by words, acts, or otherwise, and directing the appellant to appear on the following day in the court at Knoxville to show cause why a preliminary injunction should not issue.

On the same day the restraining order was served upon the appellant and immediately after such service, the appellant made a speech to a crowd of 1,000 to 1,500 people to the effect that although he had been served with the restraining order, it did not mean anything and that the Supreme Court's ruling in the segregation cases was not the law of the land. Thereafter, an order of attachment was issued by the court, charging that appellant's speech was a wilfull violation of the restraining order and constituted criminal contempt. The order of attachment was served and the appellant appeared with counsel before the court, on August 30, 1956. The court explained to him and his attorney that he would hold an immediate hearing on the issue of the preliminary injunction sought by the appellees but that there could be a continuance on the criminal contempt charge, if they desired it. Appellant's counsel, at first, requested time to prepare his defense on the contempt charge but during the hearing on the preliminary injunction changed his mind and, at his express request, the hearing proceeded on both the preliminary injunction and the contempt proceeding. The United States Attorney participated in it, at the request of the court and without objection interrogated witnesses. The court held the restraining order to have been properly issued and that the evidence justified its continuance as a preliminary injunction. The court also held that the appellant had wilfully violated the temporary restraining order; that his conduct was not protected by the First Amendment; and that he was guilty of a criminal contempt. The sentence here challenged was then imposed. On Friday August 30, Saturday August 31st, and Sunday September 1st, violence became rampant in Clinton. A mob formed, estimated at 3,000 people, with which the local police officials and others deputized to meet the emergency clashed, and, though tear gas was used, the mob could not be controlled. The State Patrol and National Guard were called and, at one point, the Guard was obliged to use fixed bayonets. Finally, the Guard Commander at head of 667 men was able to restore order.

Appellant's challenge to the validity of the sentence is on the ground that the statements made by him, as set forth in the citation and attachment, are protected by the First Amendment of the United States Constitution, guaranteeing

freedom of speech; that the procedure followed by the trial court constituted a denial of procedural due process of law under the Fifth Amendment, because the temporary restraining order was not served upon him, so he could not be guilty of violating it; that the contempt citation can not stand, because it was not brought in the name of the United States which is the real party in interest and so the conviction is null and void; that the original defendants having complied with the court's order, the case was thereby closed and appellant could not be guilty of criminal contempt for speaking against it; that the service of the contempt citation was void, because it was served upon the appellant in the courthouse where he appeared in answer to the show cause order; that the procedure constituted an improper use of the Federal police power, since the State police power had not been exhausted; and that the sentence was grossly excessive. Appellant makes no claim that he was illegally denied a trial by jury. No request for a jury trial was made by him, and his counsel conceded in oral argument that appellant was not entitled to one.

█ The question whether the district court had jurisdiction of the controversy and the power to enforce its order by the injunctive process need give us little trouble. In Brown v. The Board of Education, 347 U.S. 483, 74 S.Ct. 686, the Supreme Court concluded that in the field of public education segregation is a denial of equal protection of the laws. The constitutional principle there decided was implemented by the mandate for decree in Brown v. Board of Education, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083, wherein the cases there considered were remanded to the district courts to take such proceedings and enter such orders and decrees consistent with the opinion, as are necessary and proper to admit the parties to the cases to the public schools on a racially nondiscriminatory basis, with all deliberate speed. By the holdings there announced, we were bound in reversing the McSwain case and the dis-

trict court was, likewise, bound to issue its injunctional order, requiring the School Board to desegregate the High Schools of Anderson County. Moreover, in directing this to be done, the district judge acted with all deliberate speed, in conformity with our decision and the decision of the Supreme Court, when he commanded the School Board to desegregate by the fall term of 1956. It would seem that the Brown case, its associated cases, and our own judgment in McSwain would be a conclusive response to the appellant's arguments, without further rationalization. There is also available to us, however, the exhaustive and scholarly opinion of Circuit Judge Woodrough, speaking for the Court of Appeals of the Eighth Circuit, in Brewer v. Hoxie School District No. 46, 238 F.2d 91, 98, wherein it was held that the jurisdiction of the Federal Courts and the application of its remedies to protect rights safeguarded by the Constitution is now so well established that no one may question it. The Brewer case is completely documented and we have benefitted much from the thoroughness of the research there disclosed.

█ The right to speak is not absolute and may be regulated to accomplish other legitimate objectives of government. The First Amendment does not confer the right to persuade others to violate the law. Giboney v. Empire Storage Company, 336 U.S. 490, 502, 69 S.Ct. 684, 93 L.Ed. 834. The speech here enjoined was clearly calculated to cause a violation of law and speech of that character is not within the protection of the First Amendment, Dennis v. United States, 341 U.S. 494, 71 S.Ct. 857, 95 L. Ed. 1137; Feiner v. People of State of New York, 340 U.S. 315, 71 S.Ct. 303, 95 L.Ed. 267; Beauharnais v. People of State of Illinois, 343 U.S. 250, 72 S.Ct. 725, 96 L.Ed. 919; Chaplinsky v. State of New Hampshire, 315 U.S. 568, 62 S. Ct. 766, 86 L.Ed. 1031.

Appellant had urged the crowd to disregard the orders of the court and to continue pressure upon the school officials until Negroes were eliminated from the

Clinton High School. This, clearly, was not a mere exposition of ideas. It was advocacy of immediate action to accomplish an illegal result, sought to be avoided by the restraining order. The clear and present danger test, as applied by Judge Learned Hand, and adopted by the Supreme Court in the Dennis case, is here met by the mob violence that followed the urgings of the appellant. Danger that calls for the presence of the State Patrol and the National Guard, with the use of bayonets and tear gas, is, we think, within the narrowest limits of the concept and cries aloud for such court action as was here taken.

■ The contention that the procedure followed by the trial court constituted a denial of procedural due process because the temporary restraining order was not served upon the appellant, wherefore, he could not be guilty of violating it, is simply not applicable to the facts of record. The restraining order was served upon the appellant by the Marshal, who, with his deputy, gave clear and persuasive evidence of its service upon the appellant, the reading to him of the injunctional order, and the delivery to him of the citation, after which the appellant held up the paper and said to the crowd: "The Marshal served a temporary injunction on me and I have to appear over at Knoxville at the Federal Court Building tomorrow at 1 o'clock for a hearing * * *. You are all cordially invited to come over and we will demonstrate. * * * I will be with you folks until every Nigger is run out of the Clinton School." The Marshal's evidence was corroborated by his deputies and other witnesses. The suggestion of the appellant that the court's observation that it was of the *opinion* that the appellant knew about the restraining order is not a finding of fact, is but a captious play upon words.

■ The insistence of the appellant that the case was closed when the original defendants had complied with the court's order, so that he could not be guilty of criminal contempt for speaking against it must be rejected as clearly without merit. The Federal Court is always empowered to enforce its decrees by orderly process. The further contention that because the order was served upon the appellant in the courthouse, while he was responding to the order to show cause, requires no citation of authority to vindicate the court's action. The appellant was within the jurisdiction of the court at Knoxville as he was at Clinton and was not brought into it by the attachment. So, with the contention that the procedure followed constituted an improper use of Federal Police power, since the State Police power had not been exhausted, is equally untenable. The Federal Courts are empowered to protect Constitutional federal rights even though State power may equally be so exercised.

■ The contention that the sentence imposed upon the appellant was excessive is, likewise, rejected. Punishment is not "cruel and unusual," unless it is so greatly disproportionate to the offence committed as to be completely arbitrary and shocking to the sense of justice. Weems v. United States, 217 U. S. 349, 30 S.Ct. 544, 54 L.Ed. 793; United States v. Rosenberg, 2 Cir., 195 F.2d 583, certiorari denied 344 U.S. 838, 73 S.Ct. 20, 97 L.Ed. 687. That is not the case here.

■ Finally, an injunctional order issued by a court must be obeyed, however, it may seemingly be challenged as invalid. This principle has long been accepted and is crystallized in the classic comment of Mr. Chief Justice Taft in Howat v. State of Kansas, 258 U.S. 181, 189, 42 S.Ct. 277, 281, 66 L.Ed. 550, wherein, speaking for a unanimous court, he said: "It is for the court of first instance to determine the question of the validity of the law and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision, are to be respected." United States v. United Mine Workers of America, 330 U.S. 258, 293, 67 S.Ct. 677, 91 L.Ed.

884; Amalgamated Clothing Workers v. Richman Brothers Co., 6 Cir., 211 F.2d 449, 452. So only, may the dignity of courts be maintained and Constitutional rights be ab initio preserved.

Judgment affirmed.