**Eddie ADAMS, et al., suing on behalf of themselves and all persons similarly situated, Plaintiffs,**

v.

**Norman CARLSON, Director, Federal Bureau of Prisons, et al., Defendants.**

Civ. No. 72–153.

United States District Court, E. D. Illinois.

Dec. 6, 1973.

As Amended Dec. 12, 1973.

Michael Deutsch, National Lawyers Guild, Jeffrey H. Haas, Dennis Cunningham, Chicago, Ill., Arpriar G. Saunders, Washington, D. C., for plaintiffs.

Henry A. Schwarz, U. S. Atty., Frederick J. Hess, Asst. U. S. Atty., East St. Louis, Ill., for defendants.

ORDER

FOREMAN, District Judge:

This proceeding is a continuation of the litigation already reported at D.C., 352 F.Supp. 882. It is a class action brought on behalf of 115 inmates at the United States Penitentiary, Marion, Illinois, all of whom were placed in segregation as a result of the July, 1972 work stoppage at that institution. After this Court handed down its initial decision on Plaintiffs' motion for preliminary injunction, the Plaintiffs appealed to the

Court of Appeals for the Seventh Circuit, 488 F.2d 619 which remanded the case to this Court.

A Consolidated Hearing was held in Benton, Illinois on the issues presented in the Plaintiffs' motions for a preliminary and permanent injunction and on all issues raised and unresolved by the mandate of the Seventh Circuit. Following the hearing the parties agreed to a briefing schedule concerning the various issues before the Court with the exception of the issue of whether the Plaintiffs' continued confinement in segregation constitutes punishment disproportionate to the offenses they committed. Thus, at this time the Court will address only this single issue which the parties agree is ready for a final determination.

Specifically, Plaintiffs claim that they have spent so much time in segregation relative to the offenses which they were found to have committed that their continued confinement in H & I Units constitutes punishment disproportionate to the offense or offenses committed and, therefore, violates the Eighth Amendment's prohibition against Cruel and Unusual Punishment. They claim that those still in confinement should be released to the general population because of the allegedly unconstitutional punishment.

Originally 115 Plaintiffs were placed in segregation as a result of their participation in the July, 1972 work stoppage. Of this number, twenty-one have been transferred to other institutions and placed in general population there. Another nine have been released for one reason or another. Forty-nine are now in the general population at the Marion penitentiary. One Plaintiff has been in control status at the Marion Penitentiary, but was currently in the process of being transferred to the United States Penitentiary, McNeil Island, Washington. Since at the time of the hearing, it was not known whether he would be placed in the general population or segregated confinement at that institution, he will be treated as if he were still in H & I Units of the penitentiary at Marion. Only thirty-five Plaintiffs remain in segregation or control status at the Marion penitentiary and, thus, the Court addresses only the issue of whether the continued confinement in H & I Units of the thirty-six Plaintiffs would constitute disproportionate punishment. As to the other Plaintiffs, the issue would appear moot as that issue relates to the injunction.

The thirty-six Plaintiffs still in H & I Units to whom this Order applies are the following:

| Name | Registration Number |
|------|---------------------|
| Anderson, Bobby | 84612–132 |
| Arnold, Randolph | 2186–135 |
| Bates, Leon | 85227–132 |
| Brown, Robert W. | 91008–131 |
| Callison, Jack Buddy | 84747–132 |
| Dewberry, Lucius | 27395–117 |
| Estrada, Manuel | 83953–132 |
| Estrada, Raul | 86022–132 |
| Farris, Robert L. | 85783–132 |
| Fuston, Paul W. | 1543–135 |
| Gaskins, Frank | 92314–131 |
| Gomez, Gumersindo | 82499–132 |
| Gudino, Albert | 33316–136 |
| Hallman, Bobby | 86287–132 |
| Hammond, Michael | 86138–132 |
| Hawk, Richard E. | 26511–138 |
| Hunter, Dennis D. | 33740–118 |
| Johnson, Edward | 94019–131 |
| Lairson, John F. | 83565–132 |
| Leano, Gil M. | 32927–136 |
| McKinney, James F. | 37094–133 |
| Mares, Albert | 85831–132 |
| Mayes, Robert | 33668–136 |
| Miranda, Rafel | 78062–132 |
| Montgomery, R. | 1782–135 |
| O'Connor, Benjamin F. | 37672–133 |
| Patmore, James D. | 87017–132 |
| Perez, Joseph | 81211–302 |
| Robinson, Preston | 9179–116 |
| Roche, Edward | 83490–132 |
| Royal, Doyle D. | 86848–131 |
| Stitt, James | 28634–138 |
| Warren, David | 85855–132 |
| Watson, James A. | 19106–101 |
| Williams, Bernard | 2011–135 |
| Wright, Douglas F. | 86623–132 |

On the appeal the Court of Appeals for the Seventh Circuit previously considered this question of disproportionate punishment and determined that at that time there was insufficient evidence in the record for that Court to be able to rule upon the question. Adams v. Carlson, 488 F.2d 619 (7th Cir. 1973). The Court of Appeals also found that the

previous hearings at which Plaintiffs were found to have committed rule infractions were invalid because the prisoners were not accorded certain due process safeguards, and the Appellate Court ordered that the Plaintiffs be given new hearings. That Court further noted, as follows:

> Should the [Plaintiffs] wish to press their contention of disproportionate punishment, the hearings we have ordered, and the written memoranda which will result will provide a more satisfactory factual basis for their claim. *Adams* at 636.

In describing the new hearings which it had ordered, the Court of Appeals stated, "These must, of course, encompass misfeasance other than the work stoppage if Marion officials intend to rely on it in support of segregating appellants." *Adams*, at 636 n. 32.

Pursuant to the mandate of the Court of Appeals, this Court ordered the Defendants to have new hearings for those Plaintiffs who were still in segregation and spelled out with particularity the due process safeguards which it required be given to each Plaintiff at his new hearing. The new hearings for the 49 Plaintiffs then remaining in segregation were conducted by the prison officials during the latter part of September, 1973.

The thirty-six Plaintiffs still remaining in H & I Units have now been there for over sixteen months. Each inmate in H & I Units lives in an individual cell approximately eight feet by six feet and nine feet high and where each Plaintiff spends approximately 23½ hours per day. The cells are relatively bare and contain only a single bed, a sink, and a commode. There is very little variability in the cells and almost no place to put personal effects. Mirrors and clocks are not permitted and commissary privileges are restricted. Inmates are compelled to eat their meals in their cells, although there is no table and, as a result, some inmates eat upon the floor. They are denied the privileges of attending educational classes or group religious services although it appears that Chaplains do visit H & I Units.

Inmates in these units are not permitted to have radios although there are outlets in each cell through which an inmate can hear two radio stations by the use of earphones. Generally, the only time an inmate is allowed to leave his individual cell is for approximately one-half hour each day during which the prisoner is permitted time for recreation. During this period, the inmate may shave, shower and do any physical exercise which he desires, although there is no recreation equipment available to him.

The cells are constructed in such a manner that when an inmate is in his cell, he is physically unable to see any other inmate. The only time one inmate sees another human being is when he takes his daily thirty minutes of recreation, or when another inmate is taking his recreation and passes the cell of the first inmate, or when a prison official passes his cell. Meaningful communication is, thus made more difficult by the lack of regular face-to-face contact.

Plaintiffs have testified that guards were frequently not visible on the ranges and hence the only manner in which an inmate could communicate with them was by shouting or banging on the bars.

Most of the thirty-six Plaintiffs are currently assigned to the control unit; officially, they are no longer in segregation. In theory, segregation is used only for short-term confinement for punishment, while control status is reserved for those prisoners whom prison officials feel need long-term control. The change in status, however, appears to be only nominal. After the change from segregation to control status, it appears that at least some Plaintiffs retained the identical cells they occupied while in segregation. There is no evidence of any substantial difference in privileges granted or in deprivations suffered as to those prisoners in segre-

gation vis-a-vis those in the control unit. Thus, the Court feels it appropriate to treat those thirty-six Plaintiffs as if they are still being punished.

Defendants intimate that certain Plaintiffs remain in the control unit for reasons other than those found in the records and memoranda resulting from the new hearings provided for members of the Plaintiff class, pursuant to the Court Order. They have submitted no evidence of any other reasons, but have contended that some Plaintiffs may be there because, for example, they present a danger to other inmates or prison officials, or that they are escape risks.

The Court has not reviewed other reasons for which those Plaintiffs may be continued in control status, because the other reasons, if any, were not presented to the Court and because this Court feels that its inquiry is limited in this regard by the Court of Appeals which indicated in its footnote 32 that if the Marion officials intend to rely on other reasons for continuing to segregate the Plaintiffs, the new hearings must encompass these grounds too. If there are other reasons for segregating some of these thirty-six Plaintiffs there is no indication that the minimum due process safeguards as outlined in Miller v. Twomey, 479 F.2d 701 (7th Cir., 1973) have been accorded Plaintiffs in this regard. Thus, this Court bases its conclusions solely on the records and memoranda resulting from the new hearings and the testimony regarding the conditions of confinement.

The Court is aware that there may be some other reasons for segregating certain of these thirty-six Plaintiffs. Some may, for example, be considered dangerous or extreme escape-risks. It should be noted, however, that all of the Plaintiffs were in the prison's general population prior to the time of the work stoppage, so it would appear that none of them were considered very severe risks at that time.

The Court has carefully reviewed the memoranda resulting from the rehearings conducted as mandated by this Court. All of these Plaintiffs were found to have committed violations regarding the July, 1972 prison work stoppage, either agitating or refusing to work. Some of the Plaintiffs have apparently not been found to have committed any other offenses. Other Plaintiffs have been found to have committed several other infractions of prison rules during their confinement in segregation. The Court feels that the other offenses which these Plaintiffs were found to have committed were all of a relatively minor nature. Additionally very few of them are of a recent nature, as a preponderance of them occurred during the months of July and August of 1972. From its review of the records and memoranda of the new hearings, the Court concludes that incidents of sufficient gravity have not occurred to justify the confinement as restrictive as that imposed upon the Plaintiffs by placing them in H & I Units for 16 months. This Court feels that punishing the Plaintiffs by placing them in confinement under the very restrictive conditions imposed in H & I Units for a period of sixteen months constitutes punishment disproportionate to the various offenses with which these Plaintiffs have been charged and, consequently, is violative of the Eighth Amendment's prohibition against Cruel and Unusual Punishment.

The Court does not reach the question of whether confinement in H & I Units is *per se* violative of the Eighth Amendment. Similarly, the Court does not reach the question of whether confinement in H & I Units for a period of 16 months is disproportionate regardless of the offense. Its holding is limited solely to the particular facts of this litigation. The Court is cognizant that there may be some reasons for placing a prisoner under some kind of control for a period of sixteen months or longer.

Therefore, all thirty-six Plaintiffs who remain in H & I Units must be released from those Units to the general prison population. The Court is aware of the problems inherent in the immedi-

ate release of such a large number of prisoners to the general prison population. Prison officials must find appropriate housing for these thirty-six prisoners. Additionally, it would appear that their personal effects must be transported to their new housing areas and prison officials must find prison jobs for those thirty-six prisoners.

Wherefore, it is ordered that the Defendants, their officers, agents, servants, employees and attorneys, and those persons in active concert or participation with them who receive actual notice of this order, be, and they hereby are, ordered to release within a period of seven days from the date of this Order, the thirty-six Plaintiffs named above from the H & I Units of the Penitentiary to the general population of the prison.

### AMENDED ORDER

This Court entered an Order on December 6, 1973, ordering the Defendants to release to the general population of the prison, within seven days, the thirty-six Plaintiffs then remaining in H & I Units. Defendants have filed a motion for supersedeas, claiming that implementation of that Order within the seven days would present serious risks to the security of the institution and the safety of inmates and prison officials alike. Defendants also claim there are only eight vacant cells in the prison's general population. The Court is aware of the problems inherent in the implementation of this Order and, in fact, referred to them in its prior Order.

After considering the Defendants' motion and supporting affidavits and listening to argument from counsel for both parties, it is the decision of this Court that the Court's findings and Order must remain unchanged, but that more than seven days should be allowed for its orderly implementation. The Court will not stay its December 6, 1973 Order, but will grant additional time so that the necessary planning and arrangements may be accomplished to ef-

fect the orderly implementation of the Court's Order.

Wherefore, it is ordered that the defendants, their officers, agents, servants, employees and attorneys, and those persons in active concert or participation with them who receive actual notice of this order, be, and they hereby are, ordered to release to the general population of the prison not later than December 31, 1973, the Plaintiffs remaining in H & I Units who were named members of this class in this Court's Order of December 6, 1973.