PD-1185-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 9/11/2015 12:23:31 PM
Accepted 9/14/2015 4:53:01 PM
ABEL ACOSTA
CLERK

PDR NO. PD-_____

COURT OF APPEALS NO.
**02-14-00405-CR**

IN THE TEXAS
COURT OF CRIMINAL APPEALS
AT AUSTIN, TEXAS

**MARK MASSIMO CARDARELLI,**
Petitioner

VS.

**THE STATE OF TEXAS**
Respondent

_____

PETITION FOR DISCRETIONARY REVIEW
OF THE OPINION OF THE
SECOND COURT OF APPEALS OF
THE STATE OF TEXAS

_____

PETITION FOR REVIEW

FILED IN
COURT OF CRIMINAL APPEALS

September 14, 2015

ABEL ACOSTA, CLERK

J. WARREN ST. JOHN
State Bar No. 18986300
2020 Burnett Plaza
801 Cherry Street, Unit No. 5
Fort Worth, Texas 76102-6810
Telephone: (817) 336-1436
Fax: (817) 336-1429
E-mail: jwlawyer@aol.com

ATTORNEY FOR PETITIONER

**PETITIONER REQUESTS
ORAL ARGUMENT**

TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS:

COMES NOW, MARK MASSIMO CARDARELLI, Petitioner, and files this his Petition for Discretionary Review of the decision of the Second Court of Appeals of the State of Texas.

## LIST OF INTERESTED PARTIES

**JUDGE**:
Honorable Craig Towson
43rd Judicial District Court of
Parker County
117 Fort Worth Highway
Weatherford, Texas 76086

**PETITIONER:**
Mr. Mark Massimo Cardarelli
c/o Mr. J. Warren St. John
2020 Burnett Plaza
801 Cherry Street, Unit No. 5
Fort Worth, Texas 76102

**TRIAL COUNSEL**:

Honorable Don Schnebly
Parker County District Attorney
117 Fort Worth Highway, 2nd Floor
Weatherford, Texas 76086

Mr. J. Warren St. John
2020 Burnett Plaza
801 Cherry Street, Unit No. 5
Fort Worth, Texas 76102

Ms. Kathleen Catania
Parker County Assistant District Attorney
117 Fort Worth Highway, 2nd Floor
Weatherford, Texas 76086

**APPELLATE COUNSEL**:

Mr. Eddy Lewallen
Parker County Assistant District Attorney
117 Fort Worth Highway, 2nd Floor
Weatherford, Texas 76086

Mr. J. Warren St. John
2020 Burnett Plaza
801 Cherry Street, Unit No. 5
Fort Worth, Texas 76102

## STATEMENT REGARDING ORAL ARGUMENT

As noted on the front page of the Petition, Petitioner, MARK MASSIMO CARDARELLI, requests that he be granted oral argument in this case when the case is submitted for the Court's consideration. Petitioner feels that oral argument would be beneficial to the Court in understanding Petitioner's position.

*/S/ J. Warren St. John*
J. WARREN ST. JOHN

# TABLE OF CONTENTS

LIST OF INTERESTED PARTIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT REGARDING ORAL ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

TABLE OF CASES AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

STATEMENT OF THE CASE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

POINT FOR REVIEW.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

REASON FOR REVIEW NUMBER ONE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**THE COURT OF APPEALS HAS DECIDED AN IMPORTANT QUESTION OF STATE LAW IN A WAY THAT CONFLICTS WITH THE APPLICABLE DECISIONS OF THE COURT OF CRIMINAL APPEALS.**

**THE COURT OF APPEALS HAS SO FAR DEPARTED FROM THE ACCEPTED AND USUAL COURSE OF JUDICIAL PROCEEDINGS AND HAS SO FAR SANCTIONED SUCH A DEPARTURE BY A LOWER COURT, AS TO CALL FOR AN EXERCISE OF THIS COURT'S POWER OF SUPERVISION.**

CONCLUSION AND PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF CASES AND AUTHORITIES

## CASES:

*Adams v. Carlson,* C.A.Ill. 1973,
488 F.2d 619, on remand, 368 F. Supp. 1050. . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Adetomiwa v. Carlson,* 421 S.W.3d 922, 928. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
(Tex. App. Fort Worth 2014, no pet.)

*Com v. Jackson,* 1976, 355 N.E.2d 166,
369 Mass. 904. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Curry v. State,* 910 S.W.2d, 940 (TEX.CRIM.APP. 1995). . . . . . . . . . . . . . . . . . . . . . 7

*Ex Parte Chavez,* 213 S.W.3d, 320, 323 (TEX.CRIM.APP. 2006). . . . . . . . . . . . . . . . 5

*Hart v. Coiner,* C.A.W.Va. 1973, 483 F.2d 136,
cert. denied, 94 S.Ct. 1454, 1577,
415 U.S. 938, 983, 39 L.Ed.2d 495, 881,
reh. denied, 94 S.Ct. 1624, 416 U.S. 916
40 L.Ed.2d 118. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Kasper v. Brittain,* C.A. Tenn. 1957,
245 F.2d 92, cert. denied, 78 S.Ct. 54,
355 U.S. 834, 2 L.Ed.2d 46, reh. denied,
78 S.Ct. 147, 355 U.S. 886, 2 L.Ed.2d 92. . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Lollis v. New York State Dept. of Social Services,*
D.C.N.Y. 1970, 322 F. Supp. 473. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*People v. Broadie,* 1975, 332 N.E.2d 338,
37 N.Y.2d 100, 371 N.Y.S.2d 471, cert. denied,
96 S.Ct. 372, 423 U.S. 950, 46 L.Ed.2d 287. . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Rogers v. U.S.,* C.A. Tex. 1962, 304 F.2d 520. . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Swansey v. Elrod,* D.C.Ill. 1975, 386 F. Supp. 1138. . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Tolias,* C.A. Wash. 1977, 548 F.2d 277. . . . . . . . . . . . . . . . . . . . . 7

**CODES, RULES AND STATUTES**

RULE 9.4 (i) TEX. R. APP. P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

Tex. Code Crim. Proc. Ann. art. 42.07 (West 2006). . . . . . . . . . . . . . . . . . . . . . . . . .  4

Tex. Penal Code Ann. § 12.34. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

Tex. R. App. P. 33.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

**CONSTITUTIONAL PROVISIONS**

U.S.C.A. Const. Amend 8. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5,6,18

## STATEMENT OF THE CASE

The following summary is intended to provide a brief overview of the trial testimony. Further discussion of the testimony will be reserved for the argument and authorities section of Petitioner's point of error.

The Petitioner was arrested for the offense of Possession of Child Pornography that occurred on July 27, 2011. The Petitioner plead guilty before the Court for the offense charged. The Petitioner requested a Presentence Investigation interview.

The Court conducted a sentencing hearing on September 18, 2014. The Petitioner's mother, as well as the Petitioner, and his counselor, Lawrin Dean, testified before the Court. The Court sentenced the Petitioner to nine years in the Texas Department of Criminal Justice, Institutional Division.

The Petitioner timely filed his notice of appeal with the Court of Appeals. The Petitioner presented mitigating circumstances at his sentencing, which included testimony from his mother, himself, and his counselor, Lawrin Dean.

## PROCEDURAL HISTORY

Petitioner, MARK MASSIMO CARDARELLI, was indicted for Possession of Child Pornography. (CR. Vol. I, p. 6) Petitioner plead guilty to Possession of Child Pornography. (CR. Vol. I, pp. 1-3). The trial court sentenced the Petitioner to nine (9) years in the Institutional Division of the Texas Department of Criminal Justice (CR. Vol. I, pp. 1-3).

The Second Court of Appeals affirmed the lower court's decision on August 25, 2015. A Motion for Rehearing was filed on August 28, 2015 and was overruled on September 9, 2015.

<u>POINT FOR REVIEW</u>
<u>NUMBER ONE</u>

THE TRIAL COURT ERRED BY NOT TAKING INTO CONSIDERATION THE MITIGATING EVIDENCE PROVIDED BY PETITIONER.  (RR VOL. I, PP. 1-69)

REASON FOR REVIEW NUMBER ONE: THE COURT OF APPEALS HAS DECIDED AN IMPORTANT QUESTION OF STATE LAW IN A WAY THAT CONFLICTS WITH THE APPLICABLE DECISIONS OF THIS HONORABLE COURT.

REASON FOR REVIEW NUMBER TWO: THE COURT OF APPEALS HAS SO FAR DEPARTED FROM THE ACCEPTED AND USUAL COURSE OF JUDICIAL PROCEEDINGS AND HAS SO FAR SANCTIONED SUCH A DEPARTURE BY A LOWER COURT, AS TO CALL FOR AN EXERCISE OF THIS COURT'S POWER OF SUPERVISION.

THE OPINION

Petitioner argued in his sole point that the trial court erred by not considering mitigating evidence presented at the punishment trial and that the sentence was therefore cruel and unusual. The State questioned whether the Petitioner properly preserved his complaints. Petitioner did not object at trial to the punishment,[1] and he filed a motion for new trial that stated only, "The conviction and sentence are contrary to the law and evidence." As a general rule, the record must show that the complaint made on appeal was timely made to the trial court "with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." Tex. R. App. P. 33.1. Nothing in Petitioner's motion for new trial indicated what Petitioner's complaint was regarding the trial court's consideration of the evidence. Petitioner therefore

---

[1]The trial court did not ask Petitioner whether he had anything to say why the sentences should not be pronounced against him. *See* Tex. Code Crim. Proc. Ann. art. 42.07 (West 2006)

did not preserve his complaint.

Even if he had, we note that Petitioner's sentence falls within the statutory range for his offenses of possession of child pornography. *See* Tex. Penal Code Ann. § 12.34. The factfinder's discretion to impose any punishment within a prescribed statutory range is essentially "unfettered." *Ex Parte Chavez*, 213 S.W.3d 320, 323 (Tex. Crim. App. 2006). Subject only to an "exceedingly rare" and "somewhat amorphous" gross-disproportionality review required by the Eighth Amendment, a punishment that falls within the legislatively-prescribed range and that is based upon the factfinder's informed normative judgment is unassailable on appeal. *Id.* At 323-24; *Adetomiwa v. State*, 421 S.W.3d 922, 928 (Tex. App. Fort Worth 2014, no pet.). The trial court heard testimony from Petitioner and two other witnesses, and it then recessed to consider the evidence. When the trial judge pronounced sentence, he said on the record, "[T]he court has heard from a counselor in this matter, has heard from your mother in this matter...However, when the court takes into context what the allegations against you are, the court just cannot, in good conscience, give a probationary period of time." There was no evidence that the trial court did not consider Petitioner's mitigating evidence, nor does his sentence amount to cruel and unusual punishment. We overrule Petitioner's sole point.

Having overruled Petitioner's sole point, we affirm the trial court's judgment.


REASON TO GRANT REVIEW

The Petitioner did preserve his complaint by stating in his motion for new trial that the sentence was contrary to the law. The court did not fairly assess the mitigating circumstances for the Petitioner, not because it fairly reviewed the mitigating

5

circumstances, but because "they just don't probate child pornography" cases which appears to be predetermined by the State and the Court. Though the punishment falls within the legislatively-prescribed range, the factfinder did not have an informed objective assessment. The issue before this Court is an Eighth Amendment issue which can be raised on it's face.

LAW

The 8th Amendment to the United States Constitution prohibits cruel and unusual punishment. U.S.C.A. Const. Amend. 8. Punishment which is disproportionate to offense committed constitutes cruel and unusual punishment, whether imposed without or within prison walls. *Adams v. Carlson*, C.A.Ill. 1973, 488 F.2d 619, on remand 368 F. Supp. 1050.

Initial element to be analyzed in determining whether punishment is constitutionally disproportionate is the nature of the offense itself. *Hart v. Coiner*, C.A.W.Va. 1973, 483 F.2d 136, certiorari denied, 94 S.Ct. 1454, 1577, 415 U.S. 938, 983, 39 L.Ed.2d 495, 881, rehearing denied, 94 S.Ct. 1624, 416 U.S. 916, 40 L.Ed.2d 118.

Punishment is not "cruel and unusual" within this amendment's interdiction against infliction of cruel and unusual punishments, unless it is so greatly disproportionate to offense committed as to be completely arbitrary and shocking to sense of justice. *Rogers v. U.S.*, C.A.Tex. 1962, 304 F.2d 520.

The test to be applied in determining whether this amendment applies is whether punishment is disproportionate to the offense and the severity or harshness of sanction as measured by broad and idealistic concepts of dignity, civilized standards, humanity and

decency.  *Lollis v. New York State Dept. of Social Services*, D.C.N.Y. 1970, 322 F. Supp. 473.  See, also, *United States v. Tolias*, C.A. Wash. 1977, 548 F.2d 277, *Kasper v. Brittain*, C.A. Tenn. 1957, 245 F.2d 92, certiorari denied, 78 S.Ct. 54, 355 U.S. 834, 2 L.Ed.2d 46, rehearing denied, 78 S.Ct. 147, 355 U.S. 886, 2 L.Ed.2d 115, *Swansey v. Elrod*, D.C.Ill. 1975, 386 F.Supp. 1138.

In determining whether punishment is so disproportionate to offense as to constitute cruel and unusual punishment, the court considers the nature of offense and offender in light of degree of harm to society and penological purposes for enactment of the provision for punishment.  *Com v. Jackson*, 1976, 344 N.E.2d 166, 369 Mass. 904.  See, also, *People v. Broadie*, 1975, 332 N.E.2d 338, 37 N.Y. 2d 100, 371 N.Y.S.2d 471, certiorari denied, 96 S.Ct. 372, 423 U.S. 950, 46 L.Ed.2d 287.

In *Curry v. State*, 910 SW2d 940 (TEX.CRIM.APP. 1995), that the trier of fact must be allowed to consider mitigating evidence.

The Appellant presented mitigating evidence through his expert, Lawrin Dean as to what could be appropriate for the Court's consideration for the possibility of probation.

THE COURT: Go ahead and have a seat first.

THE WITNESS: Okay.  Thank you.

THE COURT: If you would raise your right hand.

(Witness was sworn)

THE COURT: Thank you very much.  You may proceed.

7

MR. ST. JOHN: Thank you, Your Honor.

LAWRIN DEAN,

A witness called on behalf of the Defendant, having been duly sworn, testified on her oath as follows:

DIRECT EXAMINATION

Q. (BY MR. ST. JOHN) State your name for the record.

A. My name is Lawrin Dean.

Q. And, Mrs. Dean, how are you employed?

A. I'm a clinical director at Psychotherapy Services in Fort worth, Texas.

Q. And how long have you been doing that?

A. About 18 years.

Q. And prior to doing that, what did you do for a living?

A. I worked for Tarrant County Adult Probation Department, both in the supervision of sex offenders in the community, and also as a court officer. And prior to that, I was at Tarrant County Juvenile Services.

Q. So how long have you been in the field of criminal justice?

A. Way too long.

Q. Twenty - - probably 30 years?

A. Probably 40 years.

Q. Forty years?

A. Starting when I was 3.

Q. And what's your educational background?

A. I have a - - I have a undergraduate degree in psychology and a master's in counseling, and licensed by the State of Texas to do sex offender treatment.

Q. And I'm sure the court is aware of your treatment program, I'm assuming the court has used you in the past. But just for the record, tell the court what some of the goals are of the PSY, or the Psychotherapy Services Yokefellows, what is - - what are y'all trying to accomplish?

A. Prevent sexual recidivism.

Q. I mean, that's the easy answer.

A. Yes.

Q. And what is - - how do you accomplish some of those goals with offenders?

A. Well, we have a - - certainly a specialized treatment program that deals with the elements that led to sexual offending to begin with. But, of course,

it's about addressing all of the other issues as well.

Q.    And other issues would be maybe psychological or - - I mean, whatever the issues are that affect - -

A.    Whatever the issues, yes. Each offender typically comes to us with varying degrees of problems. So it's important to have like a multi-systemic approach.

Q.    And just so the court is aware, I would suggest you're one of the top agencies in the state of Texas with this expertise, based on my practicing law over the state of Texas.

How long have you and Ezio Leite been in business together specifically?

A.    Probably about 18 years.

Q.    And do you conduct the counseling sessions, group and individual? Who does that specifically?

A.    I - - we all do. We all have a full load. We have - - certainly provide treatment for the federal system, the civil commitment program, the probation departments in Tarrant County and Wise County and Parker County. We even have a juvenile program as well. So we pretty much address every population that

there is.

Q. And some counties, I'm not - - some counties do, some counties don't, but I know in Tarrant County if there's someone who has a PSI, the - - of an inmate is in custody or on bond, they're ordered to come to you, PSY, for an evaluation; is that correct?

A. Yeah. We do all the evaluations for the presentence investigations.

Q. In this case, though, Mr. Cardarelli, prior to, my employment, actually was going to PSY or - - is it easier to say PSY?

A. It's much easier to say PSY.

Q. PSY, which stands for, for the record, Psychotherapy Services and Yokefellows; is that right?

A. Correct.

Q. Do your records indicate when Mr. Cardarelli started coming to PSY?

A. It was in March of 2013. And he was referred by his previous defense attorney for an assessment and treatment.

Q. And share with the court some of the things that - - well, let me ask you this: First of all.

describe, candidly to the Judge, how Mr. Cardarelli appeared and his attitude and stuff like that initially.

A.    Initially, my primary focus was the suicidal, the depression, irrational behavior thinking, significant K2 use.  He would come in many times very high, talking delusional.  So, immediately, we started kind of focusing on that.

We tried to get him in to - - I believe we did make an appointment at Millwood, got him in for evaluation for medication.  He was just - - he was very unstable at first.

Q.    And for how long did you see Mr. Cardarelli?

A.    I've seen him off and on since that time. Pretty regular appointments at first.  He - - I think it's probably been about six months when he started maybe showing much improvement, a little bit more rational responsible behavior, started to respond - - started responding to some of the clinical interventions we were attempting to give him.

We  - - I've seen him in individuals and then we also put him in our young offender program.

That's a new program that we developed for young males Mr. Cardarelli's age that isn't so much focused on pedophilia or sexual deviancy, but more the poor sexual boundaries, poor choices, irresponsibility, immaturity.

Q.    And is one of the tools used for males, the penile - - the plethysmograph; is that right?

A.    We do.  We use that to assess their sexual preferences in regards to age, gender, and behavioral themes.

Q.    And is that mechanism a good tool for courts to help understand how people behave as sex offenders?

A.    It certainly gives us a - - a motivation for the behavior.  You know, we have several people that act out sexually with children.  Some, that's their sexual preference, and their treatment would be a little bit different, more along pedophilia-type treatment.  And then some people act out sexually because of cognitive distortions, justifications, and so their treatment is more cognitively based.

Q.    And did you do a risk assessment on Mr. Cardarelli?

A.    Uh-huh.  Yes.

Q.    And what is that risk assessment?

A.    Well, risk assessment is kind of the buzz word today in the field because we have so many people in the community that are registered, that we don't have the money or the resources to watch everybody. And some people we need to watch 24 hours, seven days a week. And some people will benefit in treatment and lower their risk and don't need to be watched so much. So, risk assessment is certainly the direction of sex offender treatment in the community.

We have a Static 99 risk that the state of Texas has adopted to put on the website to identify people's risk for the community, for neighbors to look up and see who lives in their neighborhood. And it identifies their risk.

That static was not particularly normed on people who act out - - who are guilty of child pornography. However, they've modified it a little bit so that it can be used for people who have child porn cases and not hands-on victims.

So, on the Static 99, he came out at the moderate risk. And then developing that into the

categories, they look at 5 year, 10 year, and 15 year recidivism. So, he got - - and on this one, the way they modified it, is they took off whether he's related to the victims because, of course, their images, whether they're male, and whether he's - - whether they were strangers. They took off those categories. And then they said you can accurately - - or more reliably assess his risk.

So, he came out with a - - with three points on that, one being his age. Younger offenders - - in the world of criminology, younger offenders offend more often. So they put that into the formula.

One point, because he's not been in a relationship for two years, that denotes a higher risk. And the third one was - - so sorry. I went blank here. Oh, and if - - and if he receives a conviction for this child porn, if you - - if you have a conviction for a non-contact sexual offense, oftentimes that - - it falls into the fetish paraphilia behaviors, and those are higher risk offenders.

So, if he receives this con - - a conviction for this offense, then he would get a point

for that. And I went on and gave him that point, just in anticipation of what his true risk might be. So we came up with a 3. Then they take the people that have a - - score a 3 on this risk assessment, and then they determine their percentage or risk - - percentage of risk.

So, on Mark, he - - in 5 years, he has a risk to recidivate of 14 percent, I'm so sorry, in 5 years. In 10 years, it's 19 - - it's - - I'm so sorry. Let me start again. It's 12 percent over a 5 year period, 14 percent over a 10 year period, and then 19 percent over a 15 year period. And when you look at that for - - certainly for risk assessment, that means that 86 percent would not re-offend. And so certainly providing the resources, you know, we certainly have, I think, with sex offenders, the caliber of treatment, the caliber of supervision that we have in the community, accountability, certainly bringing in the families, we certainly can increase the accountability. I think we've proven over the years that we have a significant impact on recidivism. Registration, I think, is - - has been developed in hopes of lowering that as well, too.

...

You know, I'm in treatment. I believe people can change. I believe that if he goes to prison as a immature 23-year-old, he's going to come out not only with these problems, but he's going to come out with a whole new set of problems.

And I believe community safety - - we're not really addressing the big picture if we're making him higher risk when he comes out. So I strongly believe in the opportunity for probation. However, if they violate their conditions, I'll be the first one to testify against them.

Q. And I can - - and I can tell the court, that will be the absolute truth. Because I've had that happen - -

A. Many times.

Q. - - many times in Tarrant County.

A. Yes.

Q. Because you're a candid, honest person. That's why I have the best - - utmost respect for you.

As a matter of fact, you've testified in federal court

17

for me, and you testified truthfully in front of John McBride (sic), and that guy didn't get very good results.

A.    No he didn't, deservedly.

Q.    But that was the truth, and that's what we have to deal with.

A.    Deservedly, yes.

MR. ST. JOHN: Judge, I pass the witness.

The court has a wide latitude in sentencing, it is Appellant's belief the court was not fair in assessing what the appropriate sentence should be based on the mitigation presented. The prosecutor commented, "If you commit a child porn case in this county, you go to the pen usually."

It appeared to the Appellant the court had a knee jerk reaction to the prosecutor. Therefore, the Appellant would argue that the court is in violation of the 8th Amendment to the Constitution based on its reasoning and finding. (RR Vol. I, pp. 1-69)

CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Petitioner prays this Honorable Court to grant this petition for discretionary review and, after a full review hereon, that the Court enter an Order reversing the decision of the Second Court of Appeals and of the trial court and to remand the cause for a new trial and for such other and further relief to which he may be justly entitled.

Respectfully Submitted,

*/S/ J. Warren St. John*
J. WARREN ST. JOHN
State Bar No. 18986300
2020 Burnett Plaza
801 Cherry Street, Unit No. 5
Fort Worth, Texas  76102-6810
Telephone:  817/336-1436
Fax: 817/336-1429
E-mail: jwlawyer@aol.com

ATTORNEY FOR PETITIONER

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Petition for Discretionary Review was delivered to the State Prosecuting Attorney, P.O. Box 12405, Austin, Texas 78711 and to the Honorable Eddy Lewallen, Assistant District Attorney, Parker County, Texas, on this the 11th day of September, 2015.

/S/ J. Warren St. John

J. WARREN ST. JOHN

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 9.4(i)</u>

Certificate of Compliance with Type-Volume Limitation

This brief contains 3,840 words, in compliance with TEX.R.APP.P 9.4(i)

*/S/ J. Warren St. John*

DATED: September 11, 2015

# APPENDIX

(See Attachment)



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-14-00405-CR

| | | |
|---|---|---|
| Mark Massimo Cardarelli | § | From the 43rd District Court |
| | § | of Parker County (CR13-0129) |
| v. | § | August 25, 2015 |
| | § | Opinion by Justice Gabriel |
| The State of Texas | § | (nfp) |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's judgment. It is ordered that the judgment of the trial court is affirmed.

SECOND DISTRICT COURT OF APPEALS

By /s/ Lee Gabriel
Justice Lee Gabriel



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-14-00405-CR

MARK MASSIMO CARDARELLI                                   APPELLANT

V.

THE STATE OF TEXAS                                              STATE

----------

## FROM THE 43RD DISTRICT COURT OF PARKER COUNTY
## TRIAL COURT NO. CR13-0129

----------

## MEMORANDUM OPINION[1]

----------

In one point, Appellant Mark Massimo Cardarelli appeals his convictions and sentences for possession of child pornography. We affirm.

### Background Facts

Appellant pleaded guilty to three counts of possession of child pornography, a third-degree felony punishable by imprisonment for any term not

---

[1]See Tex. R. App. P. 47.4.

more than ten years or less than two years and a fine not to exceed $10,000. *See* Tex. Penal Code Ann. § 12.34 (West 2011), § 43.26(a) (West Supp. 2014). At the punishment hearing before the trial court, Appellant, his mother, and his psychologist testified. The trial court sentenced Appellant to nine years' confinement on each count, to run concurrently. Appellant then filed this appeal.

## Discussion

Appellant argues in his sole point that the trial court erred by not considering mitigating evidence presented at the punishment trial and that the sentence was therefore cruel and unusual. The State questions whether Appellant properly preserved his complaints. Appellant did not object at trial to the punishment,[2] and he filed a motion for new trial that stated only, "The conviction and sentence are contrary to the law and evidence." As a general rule, the record must show that the complaint made on appeal was timely made to the trial court "with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." Tex. R. App. P. 33.1. Nothing in Appellant's motion for new trial indicated what Appellant's complaint was regarding the trial court's consideration of the evidence. Appellant therefore did not preserve his complaint.

---

[2]The trial court did not ask Appellant whether he had anything to say why the sentences should not be pronounced against him. *See* Tex. Code Crim. Proc. Ann. art. 42.07 (West 2006).

2

Even if he had, we note that Appellant's sentence falls within the statutory range for his offenses of possession of child pornography. *See* Tex. Penal Code Ann. § 12.34. The factfinder's discretion to impose any punishment within a prescribed statutory range is essentially "unfettered." *Ex parte Chavez*, 213 S.W.3d 320, 323 (Tex. Crim. App. 2006). Subject only to an "exceedingly rare" and "somewhat amorphous" gross-disproportionality review required by the Eighth Amendment, a punishment that falls within the legislatively-prescribed range and that is based upon the factfinder's informed normative judgment is unassailable on appeal. *Id.* at 323–24; *Adetomiwa v. State*, 421 S.W.3d 922, 928 (Tex. App.—Fort Worth 2014, no pet.). The trial court heard testimony from Appellant and two other witnesses, and it then recessed to consider the evidence. When the trial judge pronounced sentence he said on the record, "[T]he court has heard from a counselor in this matter, has heard from your mother in this matter. . . . However, when the court takes into context what the allegations against you are, the court just cannot, in good conscience, give a probationary period of time." There was no evidence that the trial court did not consider Appellant's mitigating evidence, nor does his sentence amount to cruel and unusual punishment. We overrule Appellant's sole point.

## Conclusion

Having overruled Appellant's sole point, we affirm the trial court's judgment.

3

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL: WALKER, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: August 25, 2015

4